**Charlene OROLIN, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant.**

**No. 81 C 5025.**

United States District Court,
N.D. Dist. Illinois, E.D.

Feb. 14, 1984.

---

Black & Black, Morris, Ill., Michael H. Postilion, Chicago, Ill., for plaintiff.

James E. Garrison, Thomas M. Hamilton, Garrison, Fabrizio & Hanson, Ltd., Joliet, Ill., David H. Levitt, Lawrence E. Morrissey, Chicago, Ill., Thomas M. Hamilton, Joliet, Ill., David H. Levitt, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This diversity action is before the court on defendant's motion for summary judgment. For the reasons stated below, the court grants defendant's motion.

Plaintiff Charlene Orolin alleges that the negligence of James C. Pate, the driver of another automobile, was the proximate cause of an automobile accident that occurred on November 25, 1980, in which she was injured. At the time of the collision, Orolin's vehicle was insured by defendant, Hartford Accident and Indemnity Company ("Hartford"), and Orolin was a named insured. Orolin admits that she did not have underinsured motorist coverage prior to

the time of the accident (Amended Complaint for Declaratory Judgment ¶ 15). However, state law at the time of the accident required Hartford to offer this optional coverage.[1] Orolin denies receiving this offer of underinsured motorist coverage from Hartford and claims that she would have purchased the maximum amount of such coverage. She further claims that Hartford's choice of compliance with the statutory requirement of an "offer"—namely a simple insert or "stuffer" describing underinsured motorist coverage—did not satisfy the statute. Hence, even had she received Hartford's stuffer, the statute would have been violated. As a result of Hartford's failure properly to offer such coverage, Orolin has not been fully compensated for losses sustained in the accident. As relief, Orolin requests that underinsured motorist coverage be read into her policy by operation of law.

Hartford argues that it attempted to notify all insureds, including Orolin, of the availability of underinsured motorist coverage by enclosing an informational stuffer with each renewal mailed between February 1, 1980 and September 3, 1981. Hartford characterizes this attempt as commercially reasonable and therefore claims that this procedure satisfies the statutory requirement that it offer underinsured motorist coverage. In addition, Hartford contends that the stuffer substantively complied with the statute. Hence, despite Orolin's denial of receipt of the stuffer, Hartford asserts it complied with sections 143a and 143a–2 of the Illinois Insurance Code and that summary judgment in its favor is appropriate. If there is no genuine issue of a material fact, the court can resolve the issues by applying the law to the undisputed facts and render summary judgment.

This being a diversity case involving the interpretation of two sections of the Illinois Insurance Code, specifically the construction of the word "offer" in those sections, the court must apply the law of the State of Illinois. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Both parties rely on decisions from other jurisdictions that interpret similar insurance statutes when arguing whether Hartford's notification procedures and the language of the stuffer comply with the pertinent provisions of the Illinois Insurance Code. It is clear, however, that the court must look to the decisions of the Illinois state courts to resolve the issue before it.

■ However, research and the supporting memoranda indicate that the question regarding the construction of the word "offer" in sections 143a and 143a–2 of the Illinois Insurance Code is one of first impression in Illinois. It is the task of a federal court, when faced with an unsettled question of state law, to render a decision which it believes the highest court of the

---

1. The pertinent sections of the Illinois Insurance Code are:

755a. Uninsured or hit and run motor vehicle coverage.
§ 143a. (1) On or after July 1, 1963, no policy ... shall be renewed or delivered or issued for delivery in this State ... unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ....

\* \* \* \* \* \*

755a–2. Additional uninsured motorist coverage—Underinsured motorist coverage.
§ 143a–2. (1) Required offer of additional uninsured motor vehicle coverage. No policy ... shall be renewed or delivered or issued for delivery ... in this State unless uninsured motorist coverage as required in Section 143a of this Act is offered in an amount up to the insured's bodily injury liability limits.

\* \* \* \* \* \*

(3) Required offer of underinsured motorist coverage. Until July 1, 1983, any offer made under subsection (1) of this Section shall also include an offer of underinsured motorist coverage....

(4) Right of election or rejection of underinsured motorist coverage. Until July 1, 1983, the named insured may elect to purchase limits of underinsured motorist coverage in an amount up to the uninsured motorist coverage on the insured vehicle or may reject the offer of underinsured motorist coverage....

(5) On or after July 1, 1983, no policy ... shall be renewed or delivered or issued for delivery in this State ... unless underinsured motorist coverage is included in such policy ....

state would issue if it were faced with the same question. *Strader v. Union Hall, Inc.,* 486 F.Supp. 159, 161 (N.D.Ill.1980); 1A, Pt. 2, J. Moore, *Moore's Federal Practice* ¶ 0.309[2]. In doing so, the federal court should consider all the data which the highest court of the state would consider, *Huff v. White Motor Corp.,* 565 F.2d 104, 106 (7th Cir.1977), including decisions of sister states on the same issue. *See Robak v. United States,* 658 F.2d 471, 475 (7th Cir.1981).

### Communication of the Offer

■ Hartford's obligations under the statutes must be considered by examining the intended scope of the mandatory "offer" of underinsured motorist coverage. Although the implicit conclusion is that the insurer must introduce sufficient evidence of its efforts to offer the coverage to its insureds, *see Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980), the court thinks it untenable that the statute imposes an affirmative obligation upon insurers to give their insureds actual personal knowledge of the option to purchase underinsured motorist coverage. *See McCloe v. Utah Home Fire Insurance Co.,* 121 Ariz. 402, 590 P.2d 941 (Ariz.App.1978). A requirement that the insurer establish commercially reasonable procedures for notifying insureds of the availability of the coverage, however, is a judicially manageable standard that gives primary effect to the spirit, intent and purpose of the enactment.

■ The court must now consider whether the steps taken by Hartford in this case sufficiently "offered" underinsured motorist coverage within the contemplation of sections 143a and 143a–2 of the Illinois Insurance Code. As appears from the affidavits of several Hartford employees, five copies of each automobile renewal policy were received in Davenport, Iowa from Hartford, Connecticut between forty-five and thirty days before the effective date of the renewal policy. (Affidavit of Sandra Hurwitz, ¶ 3.) To provide notice of the optional coverage, Hartford employees at-

tached a "stuffer" which explained underinsured motorist coverage to the insured's copy of *all* automobile renewal policies. This stuffing procedure was performed in the manner customarily used by Hartford to attach or insert other material applicable to the insured's renewal policy. In addition, one employee made periodic checks of the assembly process and she could not remember finding a single error during the relevant period. (Affidavit of Beverly Curtis, ¶¶ 10–14.)

Orolin counters that Hartford's files reveal such confusion and contradictions, such as processing delays, with respect to this particular policy, that it is reasonable to infer that the procedure for mailing the stuffers must have failed. However, none of these alleged incidents bears directly on the question of whether the procedures outlined in the affidavits for notifying Orolin of the availability of the optional coverage were commercially reasonable or whether they were in fact followed. Since the court has adopted an objective standard for determining compliance with the statutory requirement, the fact that a particular insured did not receive a stuffer is largely irrelevant.

The court concludes, therefore, that Hartford established commercially reasonable procedures for notifying Orolin of the availability of underinsured motorist coverage. The stuffer was attached to important renewal policies rather than sent in a separate, more obscure mailing. Hartford obviously considered the procedures trustworthy since they were also used for mailing important renewal policies. This relatively simple process, while undoubtedly not foolproof, is sufficient to comply with the statutory requirement. *See Jacobson v. Illinois Farmers Insurance Co.,* 264 N.W.2d 804 (Minn.1978).

### Content of the Offer

Orolin also argues that Hartford's "offer" did not substantively comply with the mandatory offer requirement of sections 143a and 143a–2 of the Illinois Insurance Code. The requirement that the availability of underinsured motorist coverage must

be communicated to the insured in a meaningful way is certainly implicit within the statute. However, the manner in which insurance companies must convey this information is not readily apparent. Since there is no issue as to the content of the communication used by Hartford, here, a stuffer, to notify its insureds of the availability of underinsured motorist coverage,[2] this question is a proper one for summary judgment.

One possible construction of the term "offer" is the contract definition. Orolin argues that the "offer" contemplates an acceptance by merely an affirmative answer and must contain all the terms necessary for the definiteness of a contract. (Response to Motion for Summary Judgment, page 11.) However, this construction ignores the practicalities of the insurance field where it is understood that acceptance by the insured is as essential as is acceptance by the insurer. J. Appleman, *Insurance Law and Practice* § 171 (1981). For example, an application for insurance is a mere offer that creates no rights and imposes no duty on the insurer. *Reynolds v. Guarantee Reserve Life Insurance Co.,* 44 Ill.App.3d 764, 3 Ill.Dec. 397, 358 N.E.2d 940 (1976). Thus, it is doubtful that the Illinois legislature intended to empower an insured with the ability to create a contract solely by his or her acceptance in this particular context. *See League General Insurance Co. v. Tvedt,* 317 N.W.2d 40 (Minn. 1982).

In order to determine the legislative intent and purpose of the offer provision, this court may consider a subsequent amendment to the statute being considered. *O'Connor v. A & P Enterprises,* 81 Ill.2d 260, 41 Ill.Dec. 782, 408 N.E.2d 204 (1980). In 1982 the Illinois General Assembly adopted Public Act 82–920, section 1, which amended Illinois Insurance Code section 143a–2 by making the inclusion of underinsured motorist coverage mandatory with respect to policies renewed, delivered or issued for delivery on or after July 1, 1983. Since some states already make this coverage mandatory (Defendant's Reply in Support of Motion for Summary Judgment, page 6), the "offer" sections, when considered in relation to the statutory scheme as a whole, appear to reflect a meaning consistent with "optional" or "not mandatory."

■ Therefore, this court holds that the Illinois Supreme Court would construe these statutes to require only that the offer provide the insured with information sufficient to make an intelligent decision. Information sufficient to make such a decision would at a minimum apprise an insured of the availability of underinsured motorist coverage and prompt a reasonable insured to make further inquiry of his agent or insurance company. This approach is consistent with the practicalities of the insurance field and gives proper notice to an insured.

■ The court is further convinced that the language of Hartford's stuffer sufficiently offered underinsured motorist cov-

---

**2.** The stuffer was titled "Important Notice Concerning Increased Limits Underinsured/Uninsured Motorists Coverage" and stated the following:

> You may purchase *Uninsured* Motorists Coverage at a limit of liability equal to the Bodily Injury limit of liability of your policy or, in certain cases, a lesser amount. You may also purchase *Underinsured* Motorists Coverage equal to your Uninsured Motorists Coverage (for motor vehicles insured on a commercial policy whose coverages are combined).
> We recommended that you consider these coverages as they will provide for payment to you if you suffer bodily injury because you are struck by an uninsured motorist or by a

motorist who carries a limit of liability for bodily injury less than the amount of Uninsured/Underinsured Motorists Coverage you carry and, in either case, the other motorist is legally responsible for the accident.
> This protection applies whether or not you are occupying an automobile. For example, you or a resident relative may be struck by an uninsured or "hit-and-run" automobile while walking or bicycling. It also covers passengers in your car and persons driving your car with permission.
> Your agent can provide information concerning these coverages, the cost, and the choices available to you.

erage to Orolin.[3] The stuffer makes the insured aware of the limits of liability that may be purchased. It provides examples of accidents for which coverage would be provided and affirmatively recommends the coverage. Finally, it states that an agent can provide information concerning coverages, cost and choices available to an insured. This is, as matter of law, information sufficient for an insured to make an intelligent decision with respect to the optional coverage.[4]

Hartford's motion for summary judgment is therefore granted. No genuine issue of material fact exists that Hartford's notification procedures were commercially reasonable and that its stuffer provided Orolin with information sufficient to constitute an "offer" under sections 143a and 143a–2 of the Illinois Insurance Code. This memorandum opinion and order also establishes that an award of Orolin's attorneys' fees and costs under section 155 of the Code and a decision on any other issues raised by the parties would be inappropriate.

It is so ordered.

---

**3.** Orolin argues in another context that the wording of the stuffer was in fact contrary to Illinois law until September 3, 1980. However, the policy in effect at the time of the accident was renewed on November 6, 1980. The earlier inaccuracy is therefore irrelevant since at the time this cause of action accrued, an offer had been made in accordance with the Illinois Insurance Code. The fact that Orolin's inclusion in the policy as a named insured was not *processed* until after the accident did not prevent her from receiving the mandatory offer as of the effective date of the policy.

**4.** Orolin draws the court's attention to several decisions of the Minnesota Supreme Court.

These opinions, however, while of persuasive value only, largely support the court's conclusion in this case. *See Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86 (Minn. 1981) (message printed at the bottom of premium renewal notices was not a meaningful offer); *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849 (Minn.1982) (mere listing of underinsured motorist coverage as an option which might be purchased was insufficient notice). *But see Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980) (insurer cannot merely offer additional coverage in general terms).