(No. 61237.—

DUANE CLONINGER, Appellee, v. NATIONAL GENERAL INSURANCE COMPANY, Appellant.

*Opinion filed December 20, 1985.—Rehearing denied February 4, 1986.*

420

MILLER, J., specially concurring.

Brydges, Riseborough, Morris, Franke and Miller (Daniel P. Field and Louis W. Brydges, of counsel), for appellant.

G. Douglas Grimes, of Waukegan, for appellee.

CHIEF JUSTICE CLARK delivered the opinion of the court:

On November 20, 1981, the plaintiff, Duane Cloninger, was injured while a passenger in an automobile. Cloninger sued the driver of the automobile in which he was a passenger and received a settlement in the amount of $16,000. The settlement amount represented the limits of the driver's insurance coverage.

Cloninger claimed that his damages exceeded the set-

tlement amount and sought to recover additional sums under his own automobile insurance policy which was issued by the defendant, National General Insurance (National). The policy covered the plaintiff's three automobiles. National denied liability, and although Cloninger's policy did not expressly provide underinsured-motorist coverage, Cloninger brought a declaratory judgment action against National in the circuit court of Lake County seeking a declaration that underinsured-motorist coverage was implied by law for each of the three vehicles insured under the policy.

The complaint alleged that the defendant failed to offer underinsured-motorist coverage to Cloninger as required under section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)). The complaint further alleged that the defendant failed to adequately advise the plaintiff of his right to elect or reject such coverage.

The defendant's motion to dismiss the complaint was denied. The defendant then filed an answer to the complaint asserting that it had offered underinsured-motorist coverage to the plaintiff and that he rejected the offer. National claimed that the "Notice to Policyholders" which it had mailed to Cloninger along with a quotation-application form and a cover letter contained the offer.

The plaintiff subsequently filed a motion for summary judgment which was granted. The circuit court found that the defendant failed to make an offer of underinsured-motorist coverage to the plaintiff in a manner and form required by law and held that Cloninger had the right to accept or reject any of the defendant's optional underinsured-motorist coverages. The court ordered the defendant to submit the premium quotations for each optional coverage to the plaintiff. The plaintiff was to then tender the premium for the option he selected. The defendant failed to comply with the circuit court's order,

and the court held that by implication of law the plaintiff had underinsured-motorist coverage available to him of up to $250,000 for the occurrence alleged in his complaint. The court also held that the defendant waived its right to receive additional premiums since the defendant failed to tender the premium quotations as required by the court's earlier order. The defendant appealed to the appellate court, which affirmed the circuit court in a Rule 23 order (127 Ill. App. 3d 1166), and we granted the defendant's petition for leave to appeal.

We have been asked to decide the following issues: (1) whether the defendant made a proper offer of underinsured-motorist coverage to the plaintiff as required by section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)); (2) if there was a proper offer, whether the plaintiff rejected that offer; and (3) whether the circuit court erred in reforming the contract.

Before we begin our analysis we note that this is a case of first impression before this court. Additionally, we note that section 143a—2(3), the section we have been asked to interpret, repealed section 143a—1 of the Illinois Insurance Code (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 143a—1). Both sections had identical language mandating that insurers offer underinsured motorist coverage to their insured.

Section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)) provides in pertinent part:

> "*Required offer of underinsured motorist coverage. Any offer made under subsection (1) of this Section shall also include an offer of underinsured motorist coverage.* For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of

the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (Emphasis added.)

The legislature did not specifically define what it meant by the term "offer" in section 143a—2(3). "In such a case, the primary purpose of statutory construction is to ascertain the legislature's intention, not only from the language which it has used, but also from the reason and necessity for the act, the evils sought to be remedied, and the objects and purposes sought to be obtained." *Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489, 494.

The language of section 143a—2(3) and the legislative debates surrounding its passage, as well as the passage of its predecessor, section 143a—1, indicate that the legislature recognized that soaring medical costs often left injured parties only partially compensated for their injuries. The legislature was obviously concerned with adequately compensating injured parties. As stated by Representative Epton during a House debate on what would later be codified as section 143a—2(3): "[T]his Bill is in behalf of the consumer." House Debate, June 20, 1980, at 48.

The legislature not only required that underinsured-motorist coverage be offered but also provided that the insured had a right to elect or reject such coverage. (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(4).) The right to

elect or reject such coverage requires that the insured have information regarding the coverage. (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329.) Therefore, we believe that the legislature intended that the "offer" mandated in section 143a—2(3) provide the insured with enough information regarding underinsured-motorist coverage to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected. Such an intelligent decision cannot be made unless an explanation of the coverage is supplied. See *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 333-34.

We must now determine what type of information would adequately inform an insured so that the insured could make an intelligent decision. In this respect we find the decision of our appellate court in *Tucker* to be helpful.

In *Tucker*, the court was asked to determine whether an insurer made a proper offer of underinsured coverage to its insured as required by section 143a—1 of the Illinois Insurance Code (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 755a—1), the predecessor to section 143a—2(3). In deducing the legislature's intention, the *Tucker* court interpreted section 143a—1 "to require that insurers offer the optional coverage in definite and specific terms in renewal policies and original policies so as to make effective *** the insured's clear power of acceptance of the additional coverage." 125 Ill. App. 3d 329, 333.

The *Tucker* court found the Minnesota Supreme Court's construction of a similar "offer" provision in a Minnesota statute to be persuasive. In *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, the court held that a statute requiring insurers to offer optional coverages, including underinsured-motorist coverage, required that a four-part test be met: (1) notification must be commercially reasonable if the offer is

made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases.

The *Tucker* court used the *Hastings* test to determine if the "offer" was proper. In *Tucker*, the insurer mailed a notice to the insured that provided in pertinent part:

> "We would like you to be aware that Country Companies now offer underinsured motorist coverage. This coverage provides bodily injury protection for you if you are injured in an accident caused by another driver who does not have adequate liability insurance coverage. If you wish to add this coverage to your personal vehicle policy, please contact your Country Companies agent." 125 Ill. App. 3d 329, 332.

The *Tucker* court found that although the insurer offered the underinsured coverage in a commercially reasonable manner, through the mail, missing from the offer was a description of the limits of the underinsured coverage, the cost of the coverage, and an intelligible description of the coverage. Concluding that the insurer made an insufficient offer, the appellate court affirmed the circuit court's judgment which implied underinsurance coverage in the insured's policy by operation of law in an amount equal to the plaintiff's uninsured-motorist coverage of $100,000/$300,000.

The defendant in the present case argues that the *Tucker* court erred when it used the test set forth in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, because Minnesota has a no-fault insurance code. The defendant has not presented any persuasive arguments, and we do not believe there are any, which would make an "offer" mandated under a no-fault

insurance code considerably different from an "offer" mandated under a fault provision. The only concern of the *Hastings* court and the *Tucker* court was whether a proper "offer" of underinsured motorist coverage as mandated by statute was made. We are faced with this same issue, and we find the four-part test set forth in *Hastings* to be helpful in determining whether a proper "offer" was made in the present case.

In the case at bar, the defendant mailed an application for automobile insurance to the plaintiff. The defendant claims that the application consisted of a quotation-application form, a "Notice to Policyholders" (notice) (see appendix) and a cover letter. (There is some question whether the plaintiff received the cover letter.) "Part I" of the quotation-application form listed four options of coverage available for bodily injury liability, property damage liability, medical-payment coverage and uninsured-motorist coverage. "Part II" of the quotation-application form provided for the selection of comprehensive and collision coverage. A second page set forth questions regarding the applicant and the usage of the vehicle.

The notice contained the following language: "This form is used for selecting your Uninsured/Underinsured Motorist coverages." (See appendix.) The limits of coverage for both uninsured and underinsured coverage, as well as the semiannual premiums for each level of coverage, were printed on the form. The notice stated that uninsured-motorist coverage limits could not exceed bodily injury liability limits. In addition, there was a box to be checked if the insured rejected increased uninsured coverage.

The notice stated that underinsured coverage could not "be greater than your Uninsured Motorist Coverage limits." There was also a box to check next to the following statement: "I reject Underinsured Motorist Cov-

erage."

Neither the quotation-application form, the notice, nor the cover letter explained the nature of underinsured-motorist coverage.

The plaintiff filled out and signed the quotation-application forms insuring three vehicles and selecting bodily injury liability limits of $15,000 per person/$30,000 per occurrence for each of the three vehicles.

On the notice the plaintiff checked the box rejecting increased limits of uninsured-motorist coverage. However, he did not check a box for any of the options for underinsured motorist coverage or the box rejecting underinsured-motorist coverage. He signed and dated the notice.

In this case although the notice of underinsured coverage was made in a commercially reasonable manner, through the mail, the limits of underinsured coverage were set forth in specific terms and the premiums were set forth, the defendant failed to intelligibly advise the insured of the nature of the coverage.

An explanation similar to the explanation found acceptable to the court in *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, would have cured the improper offer in the present case. In *Orolin* the insurer included a "stuffer" in its mailing of renewal policies. The "stuffer" was titled "Important Notice Concerning Increased Limits Underinsured/Uninsured Motorists Coverage" and contained the following:

"\*\*\* You may also purchase *Underinsured* Motorist Coverage equal to your Uninsured Motorists Coverage \*\*\*.

We recommend that you consider these coverages as they will provide for payment to you if you suffer bodily injury because you are struck by an uninsured motorist or by a motorist who carries a limit of liability for bodily injury less than the amount of Uninsured/Underinsured

Motorist Coverage you carry and, in either case, the other motorist is legally responsible for the accident." 585 F. Supp. 97, 101 n.2.

Because we hold that the insurer failed to make a proper offer of underinsured-motorist coverage to the plaintiff as required by section 143a—2(3), we do not find it necessary to address the defendant's second issue, namely, whether the plaintiff rejected the offer.

The final issue presented for our review, whether the circuit court erred in reforming the contract, has been waived by the defendant since the defendant failed to raise this issue for review below. See *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 209; *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 526.

For the aforementioned reasons we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE MILLER, specially concurring:

I agree with the majority that the insurer failed to make a proper offer of underinsured-motorist coverage to the plaintiff as required by section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3)), and that the question of the manner in which the contract was reformed by the trial court has been waived.

I believe, however, that the model offer of underinsured-motorist coverage proposed by the majority is incomplete. The model offer, taken from *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, together with a schedule of the limits of the optional coverages and the premiums to be charged for those coverages, satisfies several of the tests for a proper offer set forth in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849. The model of-

fer, however, does not make clear to the insured that the recovery available under the coverage is not based upon the limits of the underinsured-motorist coverage alone, but upon the difference between those limits and the amounts recovered from the legally responsible party's insurance. Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3).

A more complete explanation of the nature of the coverage would allow the insured an opportunity to make an informed decision with respect to whether the coverage should be accepted or rejected as offered, or whether the limits of the underlying bodily injury and uninsured-motorist coverages should be increased so that the limits of the underinsured-motorist coverage could be increased as well.

**APPENDIX**

**Notice to Policyholders**

**ILLINOIS**

This form is used for selecting your Uninsured/Underinsured Motorists coverages. Please complete, sign, and return this form with your quotation or if you wish to change your existing policy.

**Uninsured Motorists Coverage**

The following limits of Uninsured Motorists Coverage are available. However, these limits cannot be greater than your Bodily Injury Liability limits:

| Option | Limits | Semiannual Premium | Comments |
|---|---|---|---|
| Basic Limits | $ 15,000/ 30,000 | $ 6 | ☒ A check in this box is a rejection of increased limits |
| Increased Limits ☐ 1 | 20,000/ 40,000 | 6 | |
| ☐ 2 | 25,000/ 50,000 | 7 | |
| ☐ 3 | 50,000/100,000 | 8 | |
| ☐ 4 | 100,000/300,000 | 10 | |
| ☐ 5 | 250,000/500,000 | 11 | |

**Underinsured Motorists Coverage**

The following limits of Underinsured Motorists Coverage are available. However, these limits cannot be greater than your Uninsured Motorists Coverage limits:

| Option | Limits | Semiannual Premium |
|---|---|---|
| ☐ 1 | $ 20,000/ 40,000 | $ 1 |
| ☐ 2 | 25,000/ 50,000 | 1 |
| ☐ 3 | 50,000/100,000 | 3 |
| ☐ 4 | 100,000/300,000 | 6 |
| ☐ 5 | 250,000/500,000 | 10 |

☐ I reject Underinsured Motorists Coverage

Zip Policy No. _____

Signature _Duane K Clominger_   Date _9 NOV 81_

UM-141 11/88

NATIONAL GENERAL INSURANCE COMPANY   A-21