EDWARD R. KRSKA, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 2—87—0151

Opinion filed November 18, 1987.

H. Kent Heller, of Harlan Heller, Ltd., of Naperville, for appellant.

Steven H. Frankel, Duane C. Quaini, and Roger K. Heidenreich, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

The plaintiff, Edward R. Krska, appeals from an order of the circuit court of Du Page County granting a motion for summary judgment by the defendant, Allstate Insurance Company. The circuit court found as a matter of law that the defendant's offer of additional underinsured motorist coverage complied with section 143a—2 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). On appeal, the plaintiff contends that the defendant's offer failed to comply with the statutory requirements of section 143a—2 of the Code in that (1) the limits of the optional coverage were not set forth in specific terms, (2) the offer failed to communicate the availability of underinsured motorist coverage in an intelligent, meaningful way, and (3) the offer failed to advise the insured that the optional coverage was available for a relatively modest premium increase.

On December 18, 1984, the plaintiff was injured when his vehicle collided with an automobile operated by Pedro E. DeLeon (DeLeon). At the time of the accident, DeLeon was insured under a State Farm Mutual Insurance Company automobile policy which had bodily injury liability limits of $50,000 per person. The plaintiff obtained a judgment against DeLeon for damages in the sum of $500,000. The plaintiff recovered $50,000 from DeLeon, which was the maximum allowable under the bodily injury liability limit of DeLeon's automobile insurance policy. At the time of the accident, the plaintiff was insured under the defendant's automobile policy which provided uninsured and underinsured motorist coverage with limits of $50,000 per person and $100,000 per occurrence and bodily injury liability coverage with a limit of $300,000 per person and $300,000 per occurrence.

On November 2, 1983, over a year prior to the plaintiff's accident, the defendant mailed the plaintiff information concerning the renewal of his policy. That information included a "coverage update" offer and a premium declarations page. The coverage update offer explained that uninsured and underinsured motorist coverage had

been combined into a single new coverage and extended policyholders an opportunity to increase their limit on the new uninsured/underinsured motorist coverage up to their current bodily injury liability limit. Additionally, the offer stated that the cost of the new coverage was indicated on the policyholder's premium declarations page. The offer also instructed the policyholder on how to accept the new coverage.

On November 30, 1983, the plaintiff renewed his policy with the defendant yet did not indicate that he wished to increase the limits of his present coverage. On May 30, 1984, the plaintiff elected to increase his uninsured/underinsured motorist coverage limit to $50,000 per person and $100,000 per occurrence.

On December 19, 1985, the plaintiff filed a complaint in the circuit court of Du Page County which alleged, *inter alia*, that the defendant failed to offer him a proper opportunity to purchase uninsured/underinsured motorist coverage in an amount up to his policy's bodily injury liability limit as required by section 143a—2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). The plaintiff requested that the circuit court reform his policy to include uninsured/underinsured motorist coverage in an amount equal to his bodily injury liability limit ($300,000). The proposed policy reformation would enable the plaintiff to recover $250,000 from the defendant because, under section 143a—2(3) of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3)), DeLeon's bodily injury liability limit ($50,000) was less than the plaintiff's underinsured motorist coverage ($300,000).

The defendant filed a motion for partial summary judgment on the part of the plaintiff's complaint which sought relief under section 143a—2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). In granting the defendant's motion, the circuit court found as a matter of law that the defendant's offer of underinsured motorist coverage satisfied the requirements of section 143a—2 of the Code and the four-part test for sufficiency of an offer for optional coverage as set forth in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548. The plaintiff appeals from the circuit court's order granting partial summary judgment.

■ The sole issue raised in this appeal is whether the defendant made a proper offer of additional underinsured motorist coverage as required by section 143a—2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). Since no genuine issue of material fact has been raised by the parties, our function on review is to determine whether the circuit court's order granting partial summary judgment was correctly entered as a matter of law. See *Burnidge Brothers Almora*

*Heights, Inc. v. Wiese* (1986), 142 Ill. App. 3d 486, 490, 491 N.E.2d 841.

■ Section 143a–2(1) requires insurers to offer insureds uninsured motorist coverage in an amount equal to the insured's bodily injury liability limit. (Ill. Rev. Stat. 1983, ch. 73, par. 755a–2(1).) Section 143a–2(5) requires that any policy which provides uninsured motorist coverage in excess of the statutory minimum ($15,000 per person, $30,000 per occurrence) must automatically provide underinsured motorist coverage in the same amount. (Ill. Rev. Stat. 1983, ch. 73, par. 755a–2(5).) Therefore, in reading sections 143a–2(1) and 143a–2(5) together, it is clear that the defendant was required to offer underinsured motorist coverage in an amount equal to the plaintiff's bodily injury liability limit.

■ In *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548, our supreme court set forth a four-part test to determine the sufficiency of an offer for optional coverage as required by section 143a–2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a–2). To satisfy the requirements of section 143a–2, an offer must (1) notify the insured in a commercially reasonable manner if the offer is not made in face-to-face negotiations; (2) specify the limits of the optional coverage without using general terms; (3) intelligibly advise the insured of the nature of the offer; and (4) advise the insured that the optional coverage is available for a relatively modest premium increase. *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26, 488 N.E.2d 548.

■ Initially, we note that neither party disputes that the defendant's offer was made in a commercially reasonable manner. An offer conveyed through the mail satisfies the requirement of commercial reasonableness. (*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 426, 488 N.E.2d 548.) Because the defendant's offer was mailed to the plaintiff, we conclude that the defendant has satisfied the first part of the *Cloninger* test.

The plaintiff first contends that the defendant's offer for optional coverage was set forth in general, not specific, terms in that it failed to indicate what types of coverage were available and the cost of such coverage in terms of a specific dollar amount. The plaintiff asserts that the defendant's offer should have listed the optional coverage in a format akin to the one used by the defendant in *Cloninger* (see *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548), and its failure to do so resulted in an improper offer. We disagree.

The defendant's offer stated:

"In response to recent Illinois state legislation, Uninsured Motorists Insurance (previously designated as Coverage SS) and Underinsured Motorists Insurance (previously designated as Coverage SU) have been combined into one new coverage called Coverage SS-Uninsured Motorists Insurance.

\* \* \*

### THIS IS OUR COVERAGE SS OFFER TO YOU

State law requires that we offer you the opportunity to raise your limits for the new Coverage SS up to your current Bodily Injury Liability (Coverage AA) limits. *To determine and compare your current Coverage SS and your current Coverage AA limits, see the enclosed Declarations page.*

You have the following options regarding your Coverage SS limits:

*You can keep your Coverage SS limits the same.* \* \* \*

*You can raise your Coverage SS limits to equal your Coverage AA limits.* \* \* \*

*You may purchase lower Coverage SS (but not lower than the limits required by law)."* (Emphasis added.)

The declarations page stated:

"Uninsured Motorists Limits Equal To Your Bodily Injury Limits Are Offered To You At The Following Prices—

Veh 1 $13.00     Veh 2 $15.20."

■ We believe that the defendant's offer specifically explained the underinsured coverage options available to the plaintiff. Initially, the offer explains that uninsured and underinsured motorist coverages have been combined. The offer then states that the plaintiff may keep his present underinsured coverage, increase that coverage, or decrease that coverage. The offer also referred the plaintiff to his declarations page, which stated the exact cost for increasing the plaintiff's present underinsured coverage limit up to his bodily injury liability limit. It is clear that the plaintiff was offered the three possible options available to him and was quoted the exact cost of increasing his present underinsured coverage limit up to his bodily injury liability limit. We view as meritless the plaintiff's assertion that the defendant be required to list the exact cost of all other coverages which increase his underinsured limit in an amount less than his current bodily injury liability limit but greater than his current underinsured limit, or which decrease his current underinsured limit. We conclude that the defendant's offer was given in specific terms, thereby satisfying the second part of the *Cloninger* test.

In passing, we note that the plaintiff relies on *Cloninger* to support his contention that an offer for optional coverage must specify the exact cost for all available coverages between the statutory minimum and his bodily injury liability limit. In our view, the plaintiff has misplaced reliance on *Cloninger*. In *Cloninger*, the court held that the defendant's offer was set forth in specific terms; however, the court did not hold that an offer for optional coverage must include a listing of all available coverages and their respective costs, even though the offer in *Cloninger* contained an all-inclusive list.

The plaintiff also directs our attention to several other cases in support of his position. Each of these cases is distinguishable. In *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, 852, the court held that an offer for optional coverage need not apprise the policyholder of all available liability limits. The holding in *Hastings* supports the defendant's position. In *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 336, 465 N.E.2d 956, the court determined that the insurer's offer lacked specificity because it made no mention of the coverage's limits or cost. In the case at bar, however, the defendant's offer mentioned the new coverage's limits and cost. In *Kuchenmeister v. Illinois Farmers Insurance Co.* (Minn. 1981), 310 N.W.2d 86, 88, the insurer's offer of optional coverage stated *in toto*: " 'Did you know that you may now have underinsured motorist and/or uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent.' " We believe that the offer in *Kuchenmeister* is in no way similar to the defendant's offer in this case.

■ The plaintiff next contends that the defendant's offer was not communicated in an intelligent, meaningful way because it failed to explain adequately the conditions under which the plaintiff could recover from his underinsured motorist coverage. The plaintiff asserts that an offer is communicated intelligently when it tracks the model language set forth in *Cloninger*. See *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 428-29, 488 N.E.2d 548.

The defendant's offer stated:

"As a result of this change in state law, you now have the new Coverage SS (*which includes Underinsured Motorists Insurance*) in your policy in limits equal to your previous Coverage SS limits. Your premium has been adjusted accordingly.

*The new Coverage SS pays you, subject to the terms and conditions of your policy, for your injuries caused by legally liable* ***

*Underinsured Motorists:*
*drivers with Bodily Injury Liability limits greater than or equal to the limits required by Illinois law (15/30) but less than your Coverage SS limits.*" (Emphasis added.)

In *Cloninger*, the court stated that an explanation of underinsured motorists coverage *similar* to the explanation found in *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, 101 n.2, would intelligibly advise an insured of the nature of the coverage. (*Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 428, 488 N.E.2d 548.) The insurer's offer in *Orolin* stated:

"You may also purchase *Underinsured* Motorist Coverage equal to your Uninsured Motorists Coverage ***.

We recommended [*sic*] that you consider these coverages as they will provide for payment to you if you suffer bodily injury because you are struck by an uninsured motorist or by a motorist who carries a limit of liability for bodily injury less than the amount of Uninsured/Underinsured Motorist Coverage you carry and, in either case, the other motorist is legally responsible for the accident." *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, 101 n.2.

After carefully reading both offers, we determine that the language contained in the defendant's offer is sufficiently similar to the model language referred to in *Cloninger*. Consequently, we conclude that the defendant's offer was communicated in an intelligent, meaningful way, thereby satisfying the third part of the *Cloninger* test.

Lastly, the plaintiff contends that the defendant's offer failed to advise him that the optional coverage was available for a relatively modest premium increase. We disagree. The defendant's offer instructed the plaintiff to check the enclosed declarations page to compare his present underinsured motorist coverage with the new coverage. The offer also said that if the plaintiff wished to raise his underinsured motorist limit up to his bodily injury liability limit, then he would be billed for an additional amount. The declarations page gave the exact cost for the increase in the plaintiff's premium should he elect the new coverage. In our view, the defendant's offer did more than advise the plaintiff that its new coverage was available for a relatively modest increase because it quoted exact rates to the plaintiff. Therefore, the defendant's offer satisfied the fourth part of the *Cloninger* test.

For the reasons expressed above, we conclude that the circuit court was correct in finding that the defendant's offer satisfied the four-part *Cloninger* test and the statutory requirements of section

143a—2 of the Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2). Accordingly, we affirm the judgment of the circuit court.

Affirmed.

NASH and REINHARD, JJ., concur.