ELSA WATSON *et al.*, Plaintiffs-Appellants, v. HARTFORD CASUALTY INSURANCE COMPANY, Defendant-Appellee.

Second District No. 2—90—0041

Opinion filed November 9, 1990.

John Kennedy, of Walsh & Knippen, Chartered, of Wheaton, for appellants.

Thomas R. Weiler, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellee.

JUSTICE GEIGER delivered the opinion of the court:
The plaintiffs, Elsa and Graham Watson, appeal the order denying

their motion for summary judgment and granting summary judgment in favor of the defendant, Hartford Casualty Insurance Company (the company). Mrs. Watson was injured in an automobile accident involving an uninsured motorist on August 6, 1986. The plaintiffs were insured under a policy issued by the company and renewed April 30, 1986.

The plaintiffs contend they should be insured up to the policy's $100,000 liability limit for bodily injury. The company contends the plaintiffs are insured up to the policy's $30,000 limit for uninsured motorist coverage. The pivotal issue before us is whether the company made an inadequate offer of additional uninsured motor vehicle coverage.

The plaintiffs had been insured by the company for at least 19 years. In 1980 and 1981, the company mailed form CAF—7012—0, with a policy renewal form, to Mr. Watson. In 1983, the company mailed form CAF—1246—0 with Mr. Watson's policy renewal form. Form CAF—1246—0 included the following language:

"As a Reminder:

You may purchase Uninsured Motorist Coverage at a limit of liability equal to the Bodily Injury limit of liability of your policy or, in certain cases, a lesser amount. Underinsured Motorist Coverage equal to your Uninsured Motorist Coverage is required when you purchase higher limits of Uninsured Motorist.

We recommend that you consider these coverages as they will provide for payment to you if you suffer bodily injury because you are struck by an uninsured motorist or by a motorist who carries a limit of liability for bodily injury less than the amount of Uninsured/Underinsured Motorist Coverage you can carry and, in either case, the other motorist is legally responsible for the accident.

This protection applies whether or not you are occupying an automobile. For example, you or a resident relative may be struck by an uninsured or 'hit-and-run' automobile while walking or bicycling. It also covers passengers in your car and persons driving your car with your permission."

Form CAF—7012—0 read as follows:

"You may purchase Uninsured Motorist Coverage at a limit of liability equal to the Bodily Injury limit of liability of your policy or, in certain cases, a lesser amount. You may also purchase Underinsured Motorist Coverage equal to your Uninsured Motorist Coverage (for motor vehicles insured on a commercial

policy those coverages are combined).

We recommend that you consider these coverages as they will provide for payment to you if you suffer bodily injury because you are struck by an uninsured motorist or by a motorist who carries a limit of liability for bodily injury less than the amount of Uninsured/Underinsured Motorist Coverage you carry and, in either case, the other motorist is legally responsible for the accident.

This protection applies whether or not you are occupying an automobile. For example, you or a resident relative may be struck by an uninsured or 'hit-and-run' automobile while walking or bicycling. It also covers passengers in your car and persons driving your car with permission.

Your agent can provide information concerning these coverages, the cost, and the choices available to you."

Mr. Watson, the named insured on the policy, had no recollection of receiving these notices. He disposed of all his documents dating prior to 1984. His uninsured motorist coverage limit was raised on April 30, 1980, from $20,000 to $30,000 although his bodily injury liability limit was $100,000. After the accident, the plaintiffs brought a declaratory judgment action to determine whether the bodily injury limit should apply.

The plaintiffs contended at trial, as they have in this court, that the company failed to make a proper offer of additional coverage sufficient to advise the Watsons in an intelligent manner as required by section 143a—2(1) of the Insurance Code (Ill. Rev. Stat., 1980 Supp., ch. 73, par. 755a—2(1)). They claim the company's forms failed the four-part test outlined in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 425-26.

The company responds that its form was found, as a matter of law, to provide sufficient information for an insured to make an intelligent decision with respect to the additional coverage (*Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, 102) and was approved by our supreme court in *Cloninger* (109 Ill. 2d at 428). The company further contends that the four-part analysis set out in *Cloninger* is not a test of necessary elements but merely a helpful list to be used when analyzing coverage.

The issue of whether an insurance company should be liable in Illinois for failure to offer additional uninsured motorist coverage arose as a case of first impression in the Federal district court. In *Orolin*, the Federal district court predicted that the Illinois Supreme Court would construe section 143a—2 to require that an insurance

company should provide the insured person with information sufficient to make an intelligent decision regarding obtaining additional coverage. The information should apprise the insured person of the availability of the coverage and prompt a reasonable person to make further inquiry. (*Orolin*, 585 F. Supp. at 101.) The district court applied this rule to an insurance form which is identical to form CAF–7012–0 and found it provided information sufficient to allow the customer to make an intelligent decision. (585 F. Supp. at 102.) We note, however, that decisions of Federal courts in construing the statutes of this State are not binding on this court. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 182.

In *Cloninger*, the Illinois Supreme Court found an insurance company liable for failure to make a proper offer of coverage. In reaching its decision, the supreme court applied the four factors listed in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849. The court stated that a four-part test must be met:

> "(1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases." *Cloninger*, 109 Ill. 2d at 425-26.

In *Cloninger*, the court found the form satisfied the second and fourth parts of the test since it listed the optional coverage in specific amounts and listed the premiums for the coverage. The insured person could check a box on the form to double his coverage in some circumstances for the additional cost of $1. However, the form failed to explain the nature of the coverage and thus failed to satisfy the fourth part of the test. (109 Ill. 2d at 428.) The supreme court noted that, had the form included an explanation of the offer as discussed in *Orolin,* it would have cured the improper offer in *Cloninger.* (109 Ill. 2d at 428.) Justice Miller, in his concurring opinion, also noted that the Hartford form in *Orolin* was insufficient because it failed to explain how uninsured motorist and underinsured motorist coverages were related. (109 Ill. 2d at 430 (Miller, J., specially concurring).) In addition, because the sufficiency of premium information was not at issue in *Cloninger,* the supreme court never ruled that an offer must include an all-inclusive list of optional coverages. See *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 555.

The company contends that its form was approved by the Illinois

Supreme Court in *Cloninger* as the model form which provided information sufficient for an insured person to make an intelligent decision. The plaintiff contends that the supreme court approved only part of the form.

We first note that the *Cloninger* court's comment concerning the Hartford form was *dictum* which concerned an issue unrelated to the essence of the controversy and which was based on hypothetical facts. The Illinois Supreme Court's *obiter dicta* are not binding authority, although they may be persuasive. (*In re Marriage of Drews* (1985), 139 Ill. App. 3d 763, 771.) The only issue in the *Cloninger* case was whether the form satisfied the first and third parts of the Hastings test. *Cloninger* did not address the second and fourth parts of the test and therefore is not persuasive as to those parts. Moreover, the concurring justice noted the form was satisfactory "together with" schedules satisfying the second and fourth parts. These schedules are not part of form CAF—7012—0. We do not believe that the *Cloninger* case is binding precedent that the Hartford form is satisfactory in all cases.

■■ ■ The plaintiff contends that the company's form fails the second and fourth parts of the *Hastings* test. This court has found similar provisions inadequate. In *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 478, this court determined that the insurance company failed to advise the insured person that optional coverage was available for a relatively modest premium increase and thus failed to meet the requirements of the *Hastings* test. One purpose of the test is to reassure an insured that the cost of additional coverage is modest. 190 Ill. App. 3d at 476.

The offer need not list the exact premiums so long as it states the additional cost is modest. (*Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 554-55.) However, the mere statement "Did you know that you may now have uninsured motorist coverage up to your bodily injury liability limits[?] If interested, contact your agent" is insufficient. (*Overbey v. Illinois Farmers Insurance Co.* (1988), 170 Ill. App. 3d 594, 603, citing *Kuchenmeister v. Illinois Farmers Insurance Co.* (Minn. 1981), 310 N.W.2d 86, 88.) A more detailed offer explaining the nature of the coverage was found to be insufficient because it failed to mention the increased cost. (*Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 336.) Thus it appears that the company's form fails to satisfy the fourth part of the *Hastings* test because it lacks premium information.

In addition, the Hartford form fails to satisfy the second part of the test which requires specific, rather than general, offers of in-

creased limits of coverage. (*Overbey*, 170 Ill. App. 3d at 603.) The offer puts the burden on the Watsons to inquire further concerning additional coverage. Section 143a—2 requires insurance companies to offer additional coverage in clear and specific terms in their renewal policies so that the customer has an effective and clear power to accept or reject the offer. *Petersen v. Allstate Insurance Co.* (1988), 171 Ill. App. 3d 909, 913. .

Even if the company's offer did not satisfy the *Hastings* test, the company contends that it need not meet the test if the offer is sufficient to apprise an insured person of the optional coverage. The company argues that the supreme court merely stated that the *Hastings* test was "helpful" in determining whether a proper offer was made. (*Cloninger*, 109 Ill. 2d at 427.) Subsequent Illinois cases discussing the *Hastings* list have referred to it as a "test" of required elements. (*Rutter*, 190 Ill. App. 3d at 475; *Petersen*, 171 Ill. App. 3d at 912; *Overbey*, 170 Ill. App. 3d at 602-03; *Krska*, 162 Ill. App. 3d at 553; *Tucker*, 125 Ill. App. 3d at 335.) In *Rutter*, this court declined to overrule *Krska*, in which we determined that the four-part test in *Cloninger* applied. (190 Ill. App. 3d at 475.) In keeping with those cases, we hold that the *Hastings* requirements, as set forth in *Cloninger*, must be satisfied for an offer to be adequate under section 143a—2 of the Insurance Code.

We believe that the fourth part of the test incorporates the valid concern that an insured person be given enough information to make an intelligent decision about optional coverages and their costs. (*Rutter*, 190 Ill. App. 3d at 476; *League General Insurance Co. v. Tvedt* (Minn. 1982), 317 N.W.2d 40, 42.) Because the company's offer lacked the specificity necessary to satisfy parts two and four of the test, the trial court erred in granting summary judgment for the company.

■ The final issue is whether the court properly denied the plaintiffs' motion for summary judgment. A motion for summary judgment should be granted if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 433-34; *Houser v. State Farm Insurance Co.* (1989), 193 Ill. App. 3d 125, 128.

While we have determined that the company's printed forms were insufficient to inform the plaintiffs of the availability of the optional coverage, it is possible that the plaintiffs may have received the information from another source, such as an insurance agent. (*Rutter*, 190 Ill. App. 3d at 476.) In such cases, summary judgment for the plaintiff

should be denied. (190 Ill. App. 3d at 482.) To have been entitled to summary judgment, the Watsons were required to show they did not receive any additional information sufficient to cure the deficiency of the form they received. *Rutter*, 190 Ill. App. 3d at 476-77.

■ In this cause, the deposition of Graham Watson reveals that he was not aware that he could increase his uninsured motorist coverage, that nobody ever told him he could increase it, and that he was not aware of the costs of the optional coverage. In fact, the minimal cost of the optional coverage was not even a factor in his actions. The company presented no evidence that the Watsons had received information concerning the premiums. In addition, the company was unable to produce any information concerning the premiums for the coverage it allegedly offered in 1980 and 1983. Thus, there was no genuine issue of material fact presented in the record regarding whether the plaintiffs actually received supplemental information which would have further advised them of the terms of the optional coverage and cured the deficient notice form. The plaintiffs were, therefore, entitled to summary judgment.

■ The remedy for an inadequate offer of uninsured motorist coverage is to increase the existing coverage to limits equal to the bodily injury liability limits of the insured person's policy. (*Rutter*, 190 Ill. App. 3d at 478.) Had plaintiffs been properly informed and offered the increased limits, it is probable that they would have selected limits providing them with protection equivalent to that which they provided the public. While it is true that the insured person might have selected lower uninsured motorist coverage limits, it is not unreasonable to require that the insurance provider bear the risk of its failure to make a proper offer of coverage. (*Rutter*, 190 Ill. App. 3d at 478.) The plaintiffs' policy provided liability limits of $100,000 for bodily injury. Therefore, the trial court should have granted judgment on plaintiffs' complaint for declaratory judgment by ruling that the limits of the policy be $100,000 for the relevant incident.

For the above reasons, the order of the circuit court is reversed, and the cause is remanded for entry of judgment consistent with this order.

Reversed and remanded.

INGLIS and McLAREN, JJ., concur.