FREDERICK PENTZIEN *et al.*, Plaintiffs-Appellees, v. LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellant.

Third District    No. 3—94—0238

Opinion filed January 10, 1995.

Algimantas Kezelis, of French, Kezelis & Kominiarek, P.C., of Chicago (Russell P. Veldenz, of counsel), for appellant.

Dunn, Martin & Miller, Ltd., of Joliet (Michael J. Martin, of counsel), for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The defendant, Liberty Mutual Insurance Company, appeals from the judgment entered in favor of the plaintiff, Frederick Pentzien, which reformed the contract of insurance between the parties. The trial court found that Liberty Mutual failed to offer uninsured motorist coverage to the plaintiff in a commercially reasonable manner and failed to intelligibly advise the plaintiff of the nature of this option. We hold that an offer of uninsured motorist coverage that is made in a mailing separate from the policy renewal statement and without follow-up is not made in a commercially reasonable manner. Therefore, we affirm.

The plaintiff had been continuously insured by Liberty Mutual since the 1960's. In 1980, Liberty Mutual sent a letter to its policyholders advising them of legislation requiring the company to offer uninsured motorist and underinsured motorist coverage in amounts equal to the bodily injury limits of the insureds' policies. In

November 1987, in response to the Illinois Supreme Court's opinion in *Cloninger v. National General Insurance Co.* (1986), 109 Ill. 2d 419, 488 N.E.2d 548, Liberty Mutual sent out another offer of uninsured motorist coverage. Neither of these mailings coincided with policy premium statements or renewals. The plaintiff does not recall receiving either mailing.

The plaintiff sustained serious injuries in an automobile accident with an uninsured motorist in June 1989. When the plaintiff made a claim against his Liberty Mutual policy, he learned that he had only the statutory minimum amount of uninsured motorist coverage, although his bodily injury limits were $300,000. Subsequently, he filed the instant suit seeking to reform the insurance contract to provide uninsured motorist coverage up to the limits of his bodily injury coverage.

At the hearing, Liberty Mutual introduced as evidence the record sheet on which it had recorded that the 1987 notice was sent to the plaintiff and was not returned by the postal service. On cross-examination, it was revealed that of the 24 persons listed on the page, only 3 had responded to Liberty Mutual's notice. No evidence was presented regarding the procedure followed for sending the 1980 offer.

The trial court found that although the 1987 Liberty Mutual notice was mailed to the plaintiff, he did not receive that notice. It held that the notice had not been sent in a commercially reasonable manner because it had not been sent with the policy renewal and Liberty Mutual had failed to follow up on the initial offer. The court further found that the notice did not intelligibly advise the plaintiff of the option to purchase uninsured motorist coverage because Liberty Mutual did not inform the plaintiff of the consequences of failing to respond to the notice. Thus the court reformed the insurance contract and ordered Liberty Mutual to provide uninsured motorist coverage to the plaintiff with limits equal to the bodily injury limits of his policy.

The first issue on appeal is whether an offer of uninsured motorist coverage is commercially reasonable when the timing of the offer does not coincide with the renewal of the policy and the insurer makes no attempt to follow up the initial mailing with any subsequent notice. Initially, we note that we are restricting our analysis to the 1987 offer because there is no evidence in the record regarding the way Liberty Mutual sent out the 1980 offer.

In its landmark decision of *Cloninger v. National General Insurance Co.* (1986), 109 Ill. 2d 419, 488 N.E.2d 548, the Illinois Supreme Court set out a four-part test for determining whether an insurance company has properly offered uninsured/underinsured motorist

coverage to its insureds. The first requirement of the *Cloninger* test is that the notice must be commercially reasonable if the offer is not made in face-to-face negotiations. Although the *Cloninger* court held that sending the notice through the mail was commercially reasonable, it did not comment on whether the mailing must coincide with the policy renewal statement.

We can find no cases in Illinois which have dealt with whether an offer made separate from the policy renewal and without follow-up is commercially reasonable. In *Jacobson v. Illinois Farmers Insurance Co.* (Minn. 1978), 264 N.W.2d 804, and *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97, the courts approved notices that were sent with policy renewals instead of a "separate, more obscure mailing." (*Jacobson*, 264 N.W.2d at 808; *Orolin*, 585 F. Supp. at 100.) In *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849, the insurer mailed an offer of uninsured motorist coverage which did not coincide with the policy renewal. One month later, the insurer followed up with a second letter. The follow-up letter advised the insured that unless it took some action, the insurer would issue the policy with only the statutory minimum limits of underinsured motorist coverage. The *Hastings* court found this procedure to be commercially reasonable.

The parties agreed at oral argument that the issue of whether the insured actually received the notice has no bearing on whether the offer was made in a commercially reasonable manner. Nevertheless, we agree with the trial court's reliance on *Jacobson* and *Orolin* in concluding that making the offer in one obscure mailing is not enough. We find that including the offer of uninsured motorist coverage with a policy renewal statement has public policy advantages over making the offer in a separate mailing. First, insureds are likely to read the policy renewal statement more carefully than they would another piece of mail which might appear to be junk mail. Second, if the premium is not paid, the insurer will have reason to know that the offer may not have reached the insured.

Moreover, the value of a follow-up letter can be demonstrated by the evidence that of 24 offers mailed simultaneously with the offer made to the plaintiff, only 3 received a response. With a response rate of 12.5%, Liberty Mutual must have known that its method of notifying policyholders of the option of uninsured motorist protection was not very effective.

Liberty Mutual argues that if the offer had been sent with the policy renewal statements, then many policyholders would not have learned of the offer for several months after Liberty Mutual began providing coverage. This potential problem has arisen in other cases

(see *Jacobson,* 264 N.W.2d 804; *Orolin,* 585 F. Supp. 97) without being commented upon by the courts. We find, however, that the disadvantage of delay is outweighed by the advantage of including the offer with the policy renewal. That is not to say that the only commercially reasonable way to make the offer is to mail it with the policy renewal statement. However, we do hold that if the offer does not coincide with the policy renewal, a follow-up notice is required.

For the foregoing reasons, we conclude that the offer of uninsured motorist coverage made by Liberty Mutual to the plaintiff was not made in a commercially reasonable manner. Because we find that the offer fails the first requirement of the *Cloninger* test, the judgment of the trial court must be affirmed. Therefore, we need not reach the other issue raised by Liberty Mutual.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

LYTTON and STOUDER, JJ., concur.