GEORGE PETERSEN *et al.*, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 87—0546

Opinion filed June 14, 1988.

Kevin M. Forde and Mary Anne Mason, both of Kevin M. Forde, Ltd.,

and Richard J. Leamy, Jr., of Wiedner & McAuliffe, Ltd., both of Chicago, for appellants.

Duane C. Quaini, Steven H. Frankel, and Jacquelyn F. Kidder, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This is a class action seeking a declaration that Allstate Insurance Company (hereinafter Allstate) had violated the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 613 *et seq.*) by failing to offer plaintiffs a proper opportunity to purchase uninsured and underinsured motorists coverage in an amount up to the bodily injury liability limits of their Allstate insurance policy. Plaintiffs ask that their policy be reformed to include such additional coverage.

Plaintiffs appeal from the order granting defendant's motion for summary judgment and denying plaintiffs' cross-motion for summary judgment. Plaintiffs also appeal the trial court's order dismissing, with prejudice, their action alleging defendant's violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*).

On November 6, 1984, Bernice Petersen was injured when she was struck by an automobile operated by an underinsured motorist. The underinsured motorist had an automobile insurance policy which provided bodily injury liability coverage with limits of $25,000 per person. That entire sum was paid to the Petersens as a result of the accident.

George Petersen purchased his Allstate policy effective May 1, 1976, and has renewed the policy semiannually during the relevant time period. At the time of the November 6, 1984 accident, the Petersens' policy provided uninsured motorists coverage with limits of $15,000 per person and $30,000 per occurrence, and bodily injury liability coverage with limits of $50,000 per person and $100,000 per occurrence. The policy did not provide any underinsured motorist coverage.

Bernice Petersen's medical expenses exceeded the $25,000 she received from the underinsured tortfeasor. The Petersens seek to recover these additional funds from their own auto insurance carrier (Allstate). To accomplish this result, the Petersens sued to reform their Allstate policy to include underinsured motorist coverage in the amount of their bodily injury coverage of $50,000 per person and $100,000 per occurrence. This would allow Bernice Petersen to recover $25,000 from Allstate in addition to the $25,000 already recovered from the underinsured at-fault driver's insurance company. The

Petersens' claim against Allstate is based on the alleged failure of Allstate to make a valid offer of underinsured coverage, up to their present bodily injury limits, in violation of section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3)).

The trial court determined that Allstate's offer of September 30, 1983, satisfied section 143a—2 of the Illinois Insurance Code as a matter of law and that the alleged failure of Allstate to have made such an offer previously was not relevant. The issues presented are: (1) whether Allstate made a proper offer of underinsured motorist coverage to the plaintiffs as required by section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3)); and (2) whether the trial court correctly decided that purchasers of insurance are not protected by the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*).

I

In order to place the issues in proper perspective, we must briefly review the public concern about underinsured motorists, together with the enactments of the Illinois legislature to relieve that concern. Approximately "twenty states have underinsured motorist statutes. These statutes provide increased protection for the named insured. This allows the insured to benefit by paying a relatively small premium for increased coverage. \*\*\* [S]ome statutes give coverage for underinsured motorist coverage by operation of law and do not follow an increased premium, \*\*\* other states make the coverage optional \*\*\*." R. Anderson, Couch on Insurance §45:649 (2d ed. 1981).

■ The Illinois underinsured motorist statute makes it mandatory on the part of the insurance carrier to offer such coverage to its insured and optional on the part of the insured to accept or reject the offer. Section 143a—2(3) of the Illinois Insurance Code provides in pertinent part:

"Required offer of underinsured motorist coverage. \*\*\* [A]ny offer made under subsection (1) of this Section shall also include an offer of underinsured motorist coverage. \*\*\* The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(3).

In *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 424-25, 488 N.E.2d 548, our supreme court stated:

"The language of section 143a—2(3) and the legislative debates surrounding its passage, as well as the passage of its predecessor, section 153a—1, indicate that the legislature recognized that soaring medical costs often left injured parties only partially compensated for their injuries. The legislature was obviously concerned with adequately compensating injured parties. As stated by Representative Epton during a House debate on what would later be codified as section 143a—2(3): '[T]his Bill is in behalf of the consumer.' House Debate, June 20, 1980, at 48.

The legislature not only required that underinsured-motorist coverage be offered but also provided that the insured had a right to elect or reject such coverage. [Citation.] The right to elect or reject such coverage requires that the insured have information regarding the coverage. [Citation.] Therefore, we believe that the legislature intended that the 'offer' mandated in section 143a—2(3) provide the insured with enough information regarding underinsured-motorist coverage to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected. Such an intelligent decision cannot be made unless an explanation of the coverage is supplied. [Citation]."

The policy originally issued by Allstate to the Petersens was for a term of six months commencing May 1, 1976. Thereafter, the policy was renewed every six months. The Petersens allege that they never received a proper offer of underinsured coverage from Allstate. Allstate contends that the material sent to the Petersens on September 30, 1983, relating to the November 1, 1983, renewal of their policy constituted a proper offer of underinsured coverage. Since the Petersens did not accept the offer, Allstate contends it has no responsibility to them.

■ It is undisputed that Allstate sent and that the Petersens received certain materials on or about September 30, 1983, relating to their insurance policy. We must now determine whether those materials constituted a proper offer of underinsured motorist coverage as required by statute and met the four-part test adopted by our supreme court in *Cloninger*.

The materials included: (1) a premium renewal statement and declarations page (see appendix); and (2) a document printed in two colors entitled "Coverage Update." The premium renewal and declaration page is a computer printout form of a bill which names George F. Petersen as the insured, identifies the vehicle, shows the six-month

term, and lists the specific types of coverage and the policy limits for each type of coverage. A separate column lists a specific premium for each type of coverage and then shows the "Total Premium 217.40." It then continues:

"UNINSURED MOTORISTS LIMITS EQUAL TO YOUR BODILY INJURY LIMITS ARE OFFERED TO YOU AT THE FOLLOWING PRICES—VEH 1 $37.50

SEE ENCLOSED COVERAGE UPDATE DESCRIBING THIS OFFER AND HOW TO ACCEPT OR REJECT IT OR OBTAIN OTHER AVAILABLE LIMITS."

The second page of the premium renewal and declaration states:

"PAY-IN-FULL .....................AMOUNT DUE $217.40
* * *

GEORGE F. PETERSEN     SEE ENCLOSED INSERT FOR IMPORTANT UNINSURED MOTORISTS OFFER
* * *

ALLSTATE INSURANCE CO. ***"

The same size and type of print appears throughout this computerized document.

Citing *Tucker v. Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956, *appeal denied* (1985), 101 Ill. 2d 588, our supreme court in *Cloninger* held that the Illinois Insurance Code is interpreted to require insurers to offer underinsured coverage in clear and specific terms in renewal policies so that the insured has an effective and clear power to accept or reject the offer. It then cited with approval the form of offer of underinsured coverage used in *Orolin v. Hartford Accident & Indemnity Co.* (N.D. Ill. 1984), 585 F. Supp. 97.

Having been a policyholder since May 1, 1976, with uninsured motorist coverage from the outset, it would be reasonable to conclude that the Petersens are aware of the meaning of uninsured coverage.

This case deals with *underinsured* coverage. The premium renewal and declaration does not mention the word "underinsured." When the policyholder is directed to the enclosed "Coverage Update," he is led to believe that it involved the *offer to increase his uninsured motorist coverage to his bodily injury limits for $37.50*.

The key document contained in the September 30, 1983, materials is the premium renewal and declaration statement. It is important to both parties. The insured looks for it so he can renew his coverage and pay his premium. The insurance company is equally interested in renewing a policy and receiving its premium. Although this document

refers the insured to the enclosed "Coverage Update" document, it give him no reason or incentive to look other than increasing his *uninsured* motorist coverage. It totally fails to offer *underinsured* coverage. Further, there is no hint of change in "SS Uninsured Motorist Coverage."

Defendant relies on *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 515, which holds that Allstate's offer of underinsured motorist coverage is proper. It appears that the identical "Coverage Update" form was used. There is a passing mention of a declaration page but no mention of a premium renewal statement and declaration page. *Krska* is distinguishable, since we view the premium renewal statement and declaration page as the key document in deciding whether the insured was adequately informed and able to make an intelligent choice.

We therefore conclude that the defendant failed to make a proper offer of underinsured motorist coverage to the Petersens as required by the Illinois Insurance Code as interpreted by our supreme court in *Cloninger. Cloninger,* 109 Ill. 2d 419, 488 N.E.2d 548.

Having made this determination, it is not necessary for us to address plaintiff's argument dealing with Allstate's alleged prior violation of the Illinois Insurance Code by failing to make appropriate offers under prior statutory amendments.

## II

■ The trial court dismissed count II of plaintiffs' complaint with prejudice because the Consumer Fraud and Deceptive Business Practices Act "[d]oes not apply to insurance." We disagree. In *Fox v. Industrial Casualty Insurance Co.* (1981), 98 Ill. App. 3d 543, 546, 424 N.E.2d 839, this court held that "[t]he sale of insurance is clearly a service and insureds are thus consumers and within the protection of the Consumer Fraud Act."

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

HARTMAN, P.J., and STAMOS,* J., concur.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.

APPENDIX

(Page 1)

ALLSTATE INSURANCE COMPANY     ISSUED   SEP 30, 1983

D 02 449752 05/01
361 SALTIS     BEGINS ON NOV 1, 1983
     WITH NO FIXED DATE OF
GEORGE F PETERSEN     EXPIRATION.
2436 N LOFEL
CHICAGO IL 60639

     75 CHEV 1C3PHS5114764

AA BODILY INJURY LIABILITY
    $50,000 EACH PERSON – $100,000 EACH OCCURRENCE
PR PROPERTY DAMAGE LIABILITY
        $10,000 EACH OCCURRENCE

SS UNINSURED MOTORISTS
    BODILY INJURY
    $15,000 EACH PERSON – $30,000 EACH ACCIDENT
DD AUTOMOBILE COLLISION     –ACTUAL CASH VALUE
    LESS DEDUCTIBLE OF     $100.00 EACH OCCURRENCE
HH AUTOMOBILE COMPREHENSIVE    –ACTUAL CASH VALUE–
JJ TOWING AND LABOR COSTS     $25.00 EACH DISABLEMENT

COVERED AUTOS RATED FOR FOLLOWING DRIVERS AND USAGE
DESIRED ADULT OVER 54, MAX 7500 MI A YR, FOR PLEASURE

6 MONTH PREMIUM PERIOD

       FROM NOV 1, 1983 1201 A.M.
       TO MAY 1, 1984 STANDARD
               TIME

COVERAGES, PREMIUMS AND OTHER POLICY INFORMATION

| COVERAGE DESCRIPTION | 75-CHEV |
|---|---|
| AA & PD BODILY INJURY & | |
| PROPERTY DAMAGE LIAB. | $127.00 |
| SS UNINSURED MOTORISTS | $26.10 |
| DD AUTO COLLISION | $33.00 |
| HH AUTO COMPREHENSIVE | $25.00 |
| JJ TOWING & LABOR COSTS | $6.30 |
| TOTAL PREMIUM BY VEHICLE | $217.40 |

| GOOD DRIVER RATE APPLIED | YES |
| SS AND HH LIMITED DISC | YES |

          TOTAL PREMIUM    $217.40

UNINSURED MOTORISTS LIMITS EQUAL TO YOUR BODILY INJURY LIMITS
ARE OFFERED TO YOU AT THE FOLLOWING PRICES–
VEH 1 $32.50
SEE ENCLOSED COVERAGE UPDATE DESCRIBING THIS OFFER AND HOW
TO ACCEPT OR REJECT IT OR OBTAIN OTHER AVAILABLE LIMITS.

ED-5    12 525 OF 1-5 A111131000 H 5 067 10 000000
   DD 0000 5-01-A3

D 02 449752

(Page 2)

PAY-IN-FULL ................................. AMOUNT DUE   $ 217.40
+ A PARTIAL PAYMENT OFF OF $2.00 IS INCLUDED

                SEE ENCLOSED INSERT FOR IMPORTANT
                UNINSURED MOTORISTS OFFER
GEORGE F PETERSEN

                00244=7520501603103202045635202317401

COUNTERSIGNED BY
AGENT W NAGEL
PHONE 312 226-2626     ALLSTATE INSURANCE CO.    60639 9-30 130007 10