KAREN E. OVERBEY, Plaintiff-Appellant, v. ILLINOIS FARMERS IN-
SURANCE COMPANY, Defendant-Appellee.—KAREN E. OVERBEY,
Plaintiff-Appellee, v. ILLINOIS FARMERS INSURANCE COMPANY,
Defendant-Appellant.

Second District   Nos. 2—87—0569, 2—87—0577 cons.

Opinion filed June 14, 1988.

Robert E. Jones, of Greene, Jones & Brisske, of Wheaton, for Karen E. Overbey.

Donald W. Garlinger and Kathleen T. Zellner, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton, for Illinois Farmers Insurance Company.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Karen Overbey, filed a five-count complaint alleging that defendant, Illinois Farmers Insurance Company (Farmers), had failed to make meaningful offers of underinsured and uninsured motorist coverage as required by section 143a—2 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2). In count I, plaintiff sought reformation of the insurance policy to include proper underinsured motorist coverage. Count II requested exemplary and punitive damages under the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*), on account of the insufficient offer of underinsured motorist coverage. The third count requested exemplary and punitive damages for breach of fiduciary duty, again on account of the improper offer of underinsured motorist coverage. Count IV alleged the offer of uninsured motorist coverage was insufficient and requested reformation of the policy to include such coverage. In count V, plaintiff sought exemplary and punitive damages under the Act based on the improper offer of uninsured motorist coverage. After a bench trial, the court entered an order finding that no meaningful offer of underinsured motorist coverage was made and reforming the policy of insurance to provide underinsured motorist coverage in amounts equal to the bodily injury liability limits of the policy, which were $100,000 per person and $300,000 per occurrence ($100,000/$300,000). The court denied plaintiff relief under counts II and III on grounds reformation of the policy was the proper remedy. Relief under counts IV and V was also denied.

Both parties appealed. The appeals were consolidated and raise the following issues. Defendant argues it complied with the applicable provisions of the Code by providing uninsured/underinsured motorist coverage and the option to increase the limits of that coverage up to the limits of the bodily injury liability limits. Plaintiff contends: (1) the policy should have been reformed to provide underinsured motorist coverage equal to the maximum amount of the bodily injury liability limits being offered on the date of the plaintiff's injuries; and (2) defendant's failure to make a proper offer of uninsured/underinsured motorist coverage warranted recovery of exemplary and punitive damages under the Act and punitive damages for breach of fiduciary duty.

Plaintiff was seriously injured in an automobile accident on December 5, 1981. The insurance policy of the party at fault had bodily injury liability limits of $50,000 per person, which was paid over to plaintiff upon settlement of the case in Du Page County; the other

party involved was uninsured. Plaintiff was insured under a policy issued by defendant to plaintiff's father, Donald Overbey. The policy provided bodily injury liability coverage limited to $100,000/$300,000 and uninsured motorist coverage of $50,000/$100,000.

At trial, Donald Overbey testified that he began insuring his automobiles with defendant, through agent Dean Roberts, in the late 1970's. When he first applied for an insurance policy with Roberts, Overbey did not recall whether there was any discussion concerning uninsured motorist coverage. Overbey agreed he would have made a judgment on the limits of coverage for bodily injury and uninsured motorist coverage at the time of the initial application. Overbey, however, did not recall the criteria he used to make the decision on the coverage to obtain and agreed he did not know what he considered important at the time he selected coverage limits. In September 1981, plaintiff purchased a Chevrolet Chevette. Overbey did not recall whether he requested different amounts of coverage from the coverage then existing on the car the Chevette replaced.

Overbey's recollections of pertinent events occurring between the time he first insured his automobiles with defendant and the time of the accident were also limited. Overbey did not recall any specific conversations with Roberts regarding the insurance he carried on the various automobiles insured by defendant. He had no recollection of any conversations with Roberts regarding underinsured motorist coverage or receiving anything in written form from defendant describing the nature of underinsured motorist coverage or that it was available for a relatively small premium. Other than a renewal notice which provided at the bottom, "Did you know that you may now have uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent," Overbey did not recollect receiving any documents concerning uninsured motorist coverage. Nor did he recall any conversations with Roberts concerning increasing his uninsured motorist coverage, the nature of such coverage, or the premiums required to obtain such coverage. Overbey acknowledged he made changes in the policies during the relevant time period but could not recall when the changes were made or what items were altered.

Overbey stated that prior to the accident he did not understand underinsured motorist coverage. Since the accident, Overbey testified he has developed a better understanding of underinsured motorist coverage. Based on what Overbey learned since the accident, he stated he would have purchased underinsured motorist coverage in amounts equal to the maximum bodily injury liability coverage availa-

ble.

Joyce Johnson, a supervisor employed at defendant's office in Aurora, testified regarding the policy coverages in effect at the time of the accident. Johnson explained the insurance policy included an endorsement (E235) which amended the uninsured motorists coverage as follows:

> "The definition of "Uninsured Motor Vehicle" under the Uninsured Motorist Coverage is amended to include a motor vehicle where there is bodily injury liability insurance or an applicable bond at the time of accident, but in amounts less than the limits carried by the insured under Uninsured Motorist Coverage."

Johnson explained the endorsement served to amend uninsured motorist coverage to include underinsured motorist coverage. No charge was added for the additional coverage. She acknowledged that endorsement E235 did not include a description or definition of underinsured motorist coverage. Johnson further revealed that a field bulletin was sent to all agents on April 4, 1980, explaining what was available through endorsement E235. In addition, a procedure bulletin was issued on June 27, 1979, indicating that policies could be issued with uninsured motorist coverage up to the limits of the bodily injury liability coverage. The minimum limit that could be selected for uninsured motorist coverage was $15,000/ $30,000. The normal maximum limit for bodily injury liability coverage at the time of the accident was $250,000/$500,000.

Dean Roberts testified that in September 1979, he became a full-time agent for defendant. On April 10, 1980, Overbey went to Roberts' office to secure binding coverage on his automobiles. Overbey was covered by Allstate Insurance Company at the time, but had decided to switch to defendant. Roberts stated it was his procedure to first fill out an information sheet for purposes of determining what rate the applicant qualified for. Overbey qualified for the "30/60 preferred package," which provided minimum coverage of $30,000/ $60,000 for bodily injury liability coverage and uninsured motorist coverage. Roberts explained that Overbey had the option to increase both these coverages and the first incremental increase was to $50,000/$100,000. Roberts' procedure in 1980 was to recommend the same limits on the uninsured motorist coverage as was taken on the bodily injury liability coverage because he felt it was important for insureds to have the same protection they were providing to somebody else. Roberts agreed it was fair to say that was the procedure used in Overbey's case.

The original application was admitted into evidence and revealed

that coverage for one of the cars insured was $250,000/$500,000 bodily injury and $50,000/$100,000 uninsured motorist; the coverage for the car that was replaced by the Chevette was $100,000/$300,000 bodily injury and $50,000/$100,000 uninsured motorist. Roberts stated the policyholder would have made the decision to increase the uninsured motorist coverage to $50,000/$100,000. Although Roberts did not have any notes from the original meeting, it was his recollection at trial that Overbey selected uninsured motorist coverage less than his bodily injury liability coverage because he felt he had sufficient group insurance and a wage compensation plan from his employer to cover the difference. He added that Overbey wanted increased bodily injury coverage on one of the cars because it was used to transport other children.

Roberts' practice in 1980-81 was to explain that uninsured motorist coverage protected the insured from motor vehicles that did not have any insurance and those that did not have enough insurance to satisfy a claim. Roberts admitted he would not use the term underinsured motorist in his explanation of uninsured motorist coverage. Roberts could not think of any reason why he would not have given this explanation to Overbey. In May 1981, Roberts contacted Overbey for purposes of reviewing the policies. At that time, Overbey increased some of the deductibles. Roberts stated it was his policy to discuss bodily injury and uninsured motorist coverages during the policy reviews.

On cross-examination, counsel attacked Roberts' specific recollections with an affidavit in which Roberts said he did not recall any of the specifics of his conversations with Overbey. Roberts explained that he could not recall the specific conversation in which he recommended uninsured motorist coverage in an amount equal to bodily injury liability coverage obtained except for the portion where Overbey indicated he had excellent benefits with his employer. Roberts agreed the word underinsured did not appear anywhere in the documents and he had no recall of any conversation discussing the definition of underinsured motorist coverage. Roberts explained that since there was no charge for underinsured motorist coverage there would not have been a conversation on that matter. Roberts further stated that to this day, Farmers still offers one coverage for uninsured and underinsured motorists. On redirect examination, Roberts stated endorsement E235 would have been part of the original policy. On recross, he acknowledged he did not mention or explain endorsement E235 to Overbey.

We address defendant's appeal first. Defendant contends the automatic inclusion of underinsured motorist coverage as part of the unin-

sured motorist coverage in plaintiff's automobile policy and the opportunity given plaintiff to elect uninsured motorist coverage up to the bodily injury limits, which he declined to do, eliminated the need for defendant to make an additional offer of underinsured motorist coverage to the plaintiff. Plaintiff argues this procedure did not satisfy the requirements of the Code or the requirements of a meaningful offer set forth in *Cloninger v. National General Insurance Co.* (1985), 109 Ill. 2d 419, 488 N.E.2d 548. In reply, defendant contends the requirements in *Cloninger* are inapplicable and, even if they are, they were satisfied here.

On April 10, 1980, when the automobile insurance policy was issued for delivery, section 143a—1 of the Illinois Insurance Code was in effect and provided:

"No policy *** shall be renewed or delivered or issued for delivery *** unless underinsured motorist coverage is offered in an amount equal to the insured's uninsured motorist coverage limits. Uninsured motorist coverage limits must be offered in an amount at least equal to the insured's bodily liability limits, although the insured may purchase lower limits ***." (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 755a—1.)

Section 143a—1 was repealed effective September 3, 1980, at which time section 143a—2 became effective. When plaintiff received the renewal notice for the Chevette in November 1981, section 143a—2 provided in subsection (1) that no automobile insurance policy shall be renewed or delivered or issued for delivery unless additional uninsured motorist coverage is offered in an amount up to the insured's bodily injury liability limits. Subsection (2) gave the insured the right to elect or reject the offer of additional uninsured motorist coverage. Subsection (3) provided that any offer made under subsection (1) shall also include an offer of underinsured motorist coverage; subsection (4) gave the insured the right to elect to purchase limits of underinsured motorist coverage in an amount up to the uninsured motorist coverage on the vehicle or reject the offer. Subsection (5) provided in pertinent part: "Notwithstanding the provisions of this Section, an insurer shall not be prohibited from solely offering a combination of uninsured and underinsured motorist coverages where the limits of liability under each coverage is in the same amount." Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(5).

Subsequently, section 143a—2 was amended, effective August 16, 1982, to provide that the required offer of underinsured motorist coverage and the right to elect or reject such coverage were only effective until July 1, 1983. Thereafter, it was provided in new subsection

(5) (the aforementioned subsection (5) was renumbered (6)): "On or after July 1, 1983, no [automobile insurance] policy *** shall be renewed or delivered or issued for delivery *** unless underinsured motorist coverage is included in such policy in an amount at least equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7—203 of the Illinois Vehicle Code." Ill. Rev. Stat., 1982 Supp., ch. 73, par. 755a—2(5).

■ A careful review of the statutory development of underinsured motorist coverage indicates that until July 1, 1983, insurers were required to *offer* underinsured motorist coverage to their insureds. After July 1, 1983, policies including uninsured motorist coverage in excess of the statutory minimum must *include* at least equal amounts of underinsured motorist coverage. The present case involves the time period before July 1, 1983. Therefore, in order for defendant to have complied with the Code provisions in effect when the policy was issued and renewed, an offer of underinsured motorist coverage must have been made.

■ We reject defendant's contention that the inclusion of the underinsured motorist coverage in the policy discharged the need to comply with the offer provisions of the statute. The purpose of requiring the insurer to offer underinsured motorist coverage was to "provide the insured with enough information *** to allow the insured to make an intelligent decision of whether such coverage should be elected or rejected." (*Cloninger*, 109 Ill. 2d at 425, 488 N.E.2d at 550.) In our opinion, eliminating the required offer of underinsured motorist coverage contained in section 143a—2(3) in situations where the coverage was automatically included in the policy contravenes the requirements of the Code in effect during the time period in question.

Defendant contends the cases interpreting section 143a—2 to permit reformation of the policy to include underinsured motorist coverage where a meaningful offer of such was not made to the insured are distinguishable from the case at bar because here underinsurance coverage was included in the policy and because plaintiff elected to secure uninsured motorist coverage in an amount higher than the minimum provided by the policy. At the time defendant filed its brief, the defendant's contention on this point, although not dispositive, was accurate. In *Cloninger*, the supreme court upheld a circuit court judgment reforming an automobile insurance policy to include underinsured motorist coverage where the offer was insufficient. Contrary to this case, the policy issued in *Cloninger* did not automatically include underinsurance coverage. A like situation was involved in *Tucker v.*

*Country Mutual Insurance Co.* (1984), 125 Ill. App. 3d 329, 465 N.E.2d 956.

Since briefs were filed, however, this court decided *Krska v. Allstate Insurance Co.* (1987), 162 Ill. App. 3d 549, 515 N.E.2d 1304. In *Krska*, the insured sought reformation of his policy to include underinsured motorist coverage on the basis the offer provided by the insurer was not in compliance with the Code. Pertinent to this case are the contents of the information concerning renewal of the policy sent to plaintiff over a year prior to the accident. That information included a coverage update offer explaining that underinsured motorist coverage had been combined into a single new coverage and extended policyholders an opportunity to increase their limits on the new uninsured/underinsured coverage up to their current bodily injury liability limits. Additional information concerning the cost of the new coverage was also included. Although underinsured coverage was already included in the policy, we nevertheless concluded that section 143a—2 required defendant to offer underinsured motorist coverage in an amount equal to plaintiff's bodily injury limit. (*Krska*, 162 Ill. App. 3d at 553, 515 N.E.2d at 1306.) Although *Krska* did not address the precise issue raised here, we find *Krska* supportive of our position that prior to July 1, 1983, the mandatory offer of underinsured motorist coverage was not negated by automatically including underinsurance coverage in the policy.

Having determined that automatic inclusion of underinsured motorist coverage did not remove the need to comply with the required offer of underinsured motorist coverage, the next matter to be resolved is whether a proper offer was made here. Defendant in arguing this point relies on the verbal communication between Overbey and Roberts and the fact that Overbey selected uninsured motorist coverage in excess of the statutory minimum.

In determining whether an offer of underinsured motorist coverage was sufficient, the supreme court in *Cloninger* found helpful a four-part test adopted in *Hastings v. United Pacific Insurance Co.* (Minn. 1982), 318 N.W.2d 849. The four requirements are: (1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases. *Cloninger*, 109 Ill. 2d at 425-26, 488 N.E.2d at 550.

Here, the testimony addressing the verbal communication be-

tween Overbey and Roberts was plagued by limited recollection. This is not surprising since the conversations occurred six to seven years prior to the trial. However, from the face of the application it is apparent that Overbey selected uninsured motorist coverage in an amount above the statutory minimum. Roberts believed Overbey selected less uninsured motorist coverage than bodily injury liability coverage on account of the benefits available to plaintiff through his employer. This evidence is consistent with Roberts' testimony that, in all likelihood, he explained to Overbey that uninsured motorist coverage protected Overbey when an at-fault party did not have any insurance or did not have sufficient insurance to satisfy the claim and recommended the coverage be obtained in amounts equal to the bodily injury liability limits selected. On the other hand, it is undisputed that Roberts did not use the term underinsured motorist coverage at any time. Further, there is no proof Overbey was advised of the modest premium increases involved.

From the testimony presented it is apparent that any mention of underinsurance coverage by Roberts was general in nature and lacking in the detail required by *Cloninger*. Generalized offers of underinsured motorist coverage have consistently been found to be insufficient to comply with the Code. (Compare *Cloninger* and *Tucker* with *Krska*.) The trial court found that no meaningful offer of underinsured motorist coverage was made to plaintiff. We are not persuaded to find otherwise.

Aside from verbal communication, the renewal notice included what could arguably be construed as an offer, *i.e.*, "Did you know that you may now have uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent." This provision was not relied on by defendant and with good reason. An almost identical provision was found not to constitute a sufficient offer of underinsured motorist coverage in *Kuchenmeister v. Illinois Farmers Insurance Co.* (Minn. 1981), 310 N.W.2d 86, 88. We agree with the holding in *Kuchenmeister* and conclude that such a provision fails to comply with the requirements set forth in *Cloninger*. See *Krska*, 162 Ill. App. 3d at 555, 515 N.E.2d at 1307-08; *Tucker*, 125 Ill. App. 3d at 335-36, 465 N.E.2d at 960-61.

■ Having found that the offer of underinsured motorist coverage was insufficient, we now turn to plaintiff's appeal. Plaintiff first claims the policy should have been reformed to provide underinsured motorist coverage in an amount equal to the maximum bodily injury liability protection offered by defendant, which at the time was $250,000/$500,000. Plaintiff's argument is predicated on *Logsdon v.*

*Shelter Mutual Insurance Co.* (1986), 143 Ill. App. 3d 957, 493 N.E.2d 748, wherein the Appellate Court for the Third District reformed an automobile insurance policy consistent with plaintiff's argument. Defendant relies on the Appellate Court for the Fifth District's opinion in *Fuoss v. Auto Owners (Mutual) Insurance Co.* (1986), 148 Ill. App. 3d 526, 499 N.E.2d 539, *aff'd* (1987), 118 Ill. 2d 430, 516 N.E.2d 268, wherein the court rejected the reasoning in *Logsdon* and reformed the policy to include underinsured motorist coverage in amounts equal to the bodily injury liability limits selected by the insured. The appellate court in *Fuoss* reasoned it would be against public policy to reform an automobile insurance policy to provide more coverage to the insured than the insured extended to others. *Fuoss,* 148 Ill. App. 3d at 535, 499 N.E.2d at 545.

The conflict in the appellate court decisions in *Logsdon* and *Fuoss* was implicitly resolved by our supreme court in its review of the *Fuoss* decision. After setting forth the pertinent language in sections 143a–2(4) and (1) of the Code, the supreme court stated in pertinent part:

> "Should we reform Fuoss' policy in accordance with the Code, we could imply coverage at no more than either $15,000/$30,000 (as the circuit court did)—the amount of his uninsured limits—or $25,000/$50,000 (as the appellate court did)—the amount of his bodily injury liability insurance." (*Fuoss,* 118 Ill. 2d at 434, 516 N.E.2d at 270.)

No mention was made of implying coverage in amounts equal to the maximum bodily injury liability limits. Therefore, we conclude the plaintiff's argument is unpersuasive.

■ We decline comment on whether the trial court's reformation of the policy at issue in this case (underinsured motorist coverage in amounts equal to the bodily injury liability limits of the insured) was consistent with the Code. This question was not addressed or raised by defendant in either its appeal or its response to plaintiff's appeal and therefore is waived.

■ Plaintiff next claims the defendant's failure to offer underinsured motorist coverage subjects the defendant to damages under the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Plaintiff requests remand of the cause to the trial court for the assessment of exemplary and punitive damages based on the violation of the Act. Plaintiff relies on *Logsdon* in support of her argument. In *Logsdon,* the court held that an allegation that the insurer failed to offer underinsured motorist coverage was sufficient to avoid dismissal of the claim under the Act

even though the insured had already recovered more from the driver's insurer than the limit of the insured's uninsured motorist coverage at the time of the accident. (*Logsdon*, 143 Ill. App. 3d at 964.) Defendant contends the Act is not applicable because the legislature indicated the remedy for failing to make a meaningful offer of underinsured motorist coverage is reformation of the contract. Defendant contends in the alternative that even assuming the Act applies, plaintiff failed to establish sufficient evidence to show a violation of the Act.

Our resolution of this issue does not require us to comment whether recovery under the Act is available in the present circumstances because plaintiff seeks only exemplary and punitive damages and, in our view, such damages are not warranted in the present case. In order for exemplary and punitive damages to be awarded as "other relief" under section 10a(a) of the Act (Ill. Rev. Stat. 1987, ch. 121½, par. 270a(a)), grounds for such relief would have to be alleged and proved. (*Guess v. Brophy* (1987), 164 Ill. App. 3d 75, 81, 517 N.E.2d 693.) In the present case, there were no allegations or proof that the failure to offer underinsured motorist coverage was tinged with the fraud, malice or gross negligence indicating a wanton disregard for the rights of others which is the basis for an award of punitive damages. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.) Therefore, since the plaintiff is clearly not entitled to exemplary and punitive damages, we need not address this argument any further.

■ Finally, we find plaintiff's claim seeking recovery for breach of fiduciary duty waived for lack of citation to any supporting authority in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)). Even if we did reach this argument, it is without merit because in Illinois there is no fiduciary relationship between an insurance company and an insured. (*Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 296-97, 468 N.E.2d 1251.) Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty. Further, plaintiff seeks only punitive damages under this theory, which we have already determined are not warranted.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.