**Luke DeGRAND and Karen Kies DeGrand, Plaintiffs–Appellants,**

v.

**MOTORS INSURANCE CORPORATION, a foreign corporation, Defendant–Appellee.**

No. 89–2487.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1990.

Decided May 30, 1990.

Donald C. Clark, Jr., McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellant Luke DeGrand.

Donald C. Clark, Jr., Karen K. DeGrand, McDermott, Will & Emery, Luke DeGrand,

Clark & DeGrand, Chicago, Ill., for plaintiff-appellant Karen K. DeGrand.

John T. Hickey, Jr., Ronald Betman, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Shortly after they purchased a new car, Luke DeGrand and Karen Kies DeGrand were involved in an automobile accident in Evanston, Illinois. Karen sustained a severe and permanent ankle injury as a result of the two-car collision; to obtain compensation for Karen's injuries, the DeGrands sued the driver of the other car. Unfortunately, that driver carried only minimal bodily injury liability coverage—$50,000—which was insufficient to compensate Karen.

Karen and Luke DeGrand turned to their own automobile insurance policy to determine whether their policy covered the excess damage. When they discovered that it did not, they sued their insurer, Motors Insurance Corporation ("MIC"), in state court for reformation of their insurance contract, claiming that MIC had violated Illinois law by failing to offer them underinsured motorist coverage in an amount equal to their bodily injury liability coverage. MIC removed the action to federal district court, which, pursuant to its diversity jurisdiction, granted MIC's motion for summary judgment. This appeal followed.

I.

On February 8, 1986, the DeGrands purchased a 1986 Chevrolet Nova from Ruby Chevrolet in Chicago. Before driving their new car from the lot, the DeGrands applied for and received automobile insurance from MIC. Their insurance policy provided bodily injury and property damage coverage of $100,000 per person/$300,000 per occurrence. The policy also provided uninsured motorist coverage of $15,000 per person/$30,000 per occurrence [1] and—al-

---

**1.** At the time the DeGrands purchased their insurance, Illinois Annotated Statute chapter 95½, paragraph 7–203 required automobile drivers to

though allegedly unknown to the DeGrands—underinsured motorist coverage in the same amounts. Indeed, the DeGrands claim that they never knew about the underinsured motorist coverage until after their accident. There is no question, however, that the DeGrands had sufficient knowledge (whether actual or imputed) of their *un*insured motorist coverage. Luke DeGrand's signature appears underneath the following text in the insurance application: "I acknowledge that I have been provided an opportunity to purchase uninsured motorists coverage up to the limits of my bodily injury limits." Approximately one month after their new automobile rolled off Ruby Chevrolet's lot, the DeGrands were involved in the accident that led to this lawsuit.

Put simply, the question presented by these facts is whether Illinois law requires insurers to *offer* underinsured motorist coverage to automobile purchasers who opt for minimum uninsured motorist coverage. The DeGrands argue that MIC's failure to offer them underinsured motorist coverage—irrespective of their policy's provision of underinsured motorist coverage in the same amount as uninsured motorist coverage—constituted a breach of its legal responsibilities under the Illinois Insurance Code. MIC, on the other hand, counters that recent amendments to the Illinois Insurance Code make such an offer unnecessary when an individual elects minimum uninsured motorist coverage: so long as the policy contains an equivalent amount of uninsured and underinsured coverage, as it did in this case, Illinois law does not require insurers to offer additional underinsured motorist coverage. The district court sided with MIC and granted MIC's motion for summary judgment, explaining that the Illinois Insurance Code did not require insurers to offer additional underinsured motorist coverage when individuals elect uninsured motorist coverage at the statutory minimum:

> Because plaintiffs' insurance policy provided uninsured motorist coverage at the minimum limit, MIC was under no

statutory duty to make an offer of underinsured motorist coverage. As of July 1, 1983, an insurer's obligation to include—not merely offer—underinsured motorist coverage turns on whether the policy provides for uninsured motorist coverage in excess of the statutory minimum. Since plaintiffs' policy was issued after July 1, 1983 and provided uninsured motorist coverage only at the statutory minimum level, their claim against MIC must fail.

Opinion at 5, 1989 WL 68400 (N.D.Ill. June 14, 1989). Of course, we review *de novo* a district court's grant of summary judgment. *Puckett v. Soo Line R.R.*, 897 F.2d 1423, 1425 (7th Cir.1990); *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987).

## II.

The parties do not dispute that before July 1, 1983, Illinois law required insurers *to offer* underinsured motorist coverage in an amount commensurate with the policy limits governing bodily injury liability. This requirement is clear from the face of the statute itself; Section 143a–2 of the Illinois Insurance Code provides, in pertinent part:

(1) Required offer of additional uninsured motor vehicle coverage. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State unless uninsured motorist coverage as required in Section 143a of this Act is offered in an amount up to the insured's bodily injury liability limits.

. . . . .

(3) Required offer of underinsured motorist coverage. Until July 1, 1983, any offer made under subsection (1) of this Section shall also include an offer of underinsured motorist coverage.

possess at least this amount of uninsured motor-        ist coverage.

Ill.Ann.Stat. ch. 73, ¶ 755a–2 (Smith–Hurd Supp.1989) (footnote omitted). Under this statutory scheme, Illinois required the insurer to make a meaningful offer of underinsured motorist coverage that could then be accepted or rejected by each insured individual. Ill.Ann.Stat. ch. 73, ¶ 755a–2(4) (Smith–Hurd Supp.1989); *Cloninger v. National Gen. Ins. Co.*, 109 Ill.2d 419, 429, 94 Ill.Dec. 549, 551, 553, 488 N.E.2d 548, 550, 552 (1985).

Illinois lawmakers substantially altered this scheme in August 1982, P.A. 82–920, by amending the Illinois Insurance Code. That amendment provides, again in pertinent part:

> (5) On or after July 1, 1983, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State unless underinsured motorist coverage is included in such policy in an amount at least equal to the total amount of uninsured motorist coverage provided in that policy where such uninsured motorist coverage exceeds the limits set forth in Section 7–203 of the Illinois Vehicle Code.

Ill.Ann.Stat. ch. 73, ¶ 755a–2 (Smith–Hurd Supp.1989). Put simply, the statute seems to state that whenever an individual purchases uninsured motorist coverage in an amount greater than the statutory minimum, the insurer must also provide underinsured motorist coverage in the same amount. The insurer must provide and the insured must accept the underinsured motorist coverage; Illinois law, after July 1, 1983, did not permit the insurer or the insured to reject this coverage.

This new statutory scheme provided, by operation of law, additional coverage for many individuals purchasing automobile insurance after July 1, 1983. This result seems to be consistent with the legislature's purpose in enacting the statute's predecessor; as the Illinois Supreme Court observed in *Cloninger,*

> [T]he legislature recognized that soaring medical costs often left injured parties only partially compensated for their injuries. The legislature was obviously concerned with adequately compensating injured parties. As stated by Representative Epton during a House debate on what would later be codified as section 143a–2(3): "[T]his Bill is in behalf of the consumer." House Debate, June 20, 1980, at 48.

109 Ill.2d at 424, 94 Ill.Dec. at 551, 488 N.E.2d at 550. This rationale applies with equal force to each automobile purchaser who elects, after July 1, 1983, to purchase uninsured motorist coverage in an amount above the statutory minimum: he or she must also purchase underinsured motorist coverage in the same amount.

But here we are presented with an anomaly. Seemingly, according to the language of the statute, any automobile owner who purchases *the minimum amount of uninsured motorist coverage* is entitled neither to an offer of underinsured motorist coverage nor to automatic inclusion of such coverage in an amount commensurate with uninsured motorist coverage. The former entitlement apparently applies only to those policies purchased before July 1, 1983; the latter apparently applies only to those policies that include uninsured motorist coverage in an amount greater than the statutory minimum.

We cannot discern any reason why Illinois lawmakers left this apparent window of underinsured motorist non-coverage for owners of automobiles who have the least amount of uninsured motorist coverage.[2]

---

**2.** Of course, we recognize that any insurance company that provides a driver who possesses the statutory minimum amount of uninsured motorist coverage with the same amount of underinsured motorist coverage is providing virtually worthless underinsured coverage:

> [U]nderinsured coverage in the minimum limits of 15/30 is indeed illusory because it would never be payable when recovery is sought from another Illinois motorist. Furthermore, it would not be payable in instances where the at-fault driver is insured in other States which have financial responsibility lim-

The legislative history supporting the amendment does not shed clear light on the matter, nor does either party to the appeal offer cogent reasons why the legislature would have adopted this course. Instead, the parties focus upon Illinois case law to interpret this statutory language. Since this is a diversity case, such focus is proper. *Cf. United States v. Thirty–Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822 (1971); *Waldron v. McAtee*, 723 F.2d 1348, 1352 (7th Cir.1983) ("Only a state court can authoritatively interpret its own state's statutes and ordinances.").[3]

## III.

Few Illinois courts have considered the operation of section 755a–2 as it relates to underinsured motorist coverage. The district court's opinion in this case examines only three: *Petersen v. Allstate Insurance Co.*, 171 Ill.App.3d 909, 121 Ill.Dec. 787, 525 N.E.2d 1094 (1st Dist.), *appeal denied*, 122 Ill.2d 593, 125 Ill.Dec. 235, 530 N.E.2d 263 (1988); *Overbey v. Illinois Farmers Insurance Co.*, 170 Ill.App.3d 594, 121 Ill. Dec. 769, 525 N.E.2d 1076 (2d Dist.1988); and *Krska v. Allstate Insurance Co.*, 162 Ill.App.3d 549, 114 Ill.Dec. 33, 515 N.E.2d 1304 (2d Dist.1987). To this list, we add one more: *Eipert v. State Farm Mutual Automobile Insurance Co.*, 189 Ill.App.3d 630, 136 Ill.Dec. 973, 545 N.E.2d 497 (1st Dist.1989).

The district court relied primarily on *Overbey* and *Krska* to conclude that insurers need not *offer* underinsured coverage to motorists. The Illinois Appellate Court wrote in *Overbey*—an "offer" case involving a pre–1983 policy—that the "required offer of underinsured motorist coverage and the right to elect or reject such coverage were only effective until July 1, 1983." 170 Ill.App.3d at 600, 121 Ill.Dec. at 774, 525 N.E.2d at 1080. The court explained its construction of the statute:

> A careful review of the statutory development of underinsured motorist coverage indicates that until July 1, 1983, insurers were required to *offer* underinsured motorist coverage to their insureds. After July 1, 1983, policies including uninsured motorist coverage in excess of the statutory minimum must *include* at least equal amounts of underinsured motorist coverage.

*Id.* at 601, 121 Ill.Dec. at 775, 525 N.E.2d at 1081 (emphasis in original).[4] This reading of the statute suggests that once the legislature enacted paragraph 755a–2(5), insurers were not required to make any offer of underinsured motorist coverage so long as they included such coverage in the policy. The district court relied upon *Krska* for the same conclusion.[5] *See* Opinion at 6.

---

its equal to or greater than those required in Illinois.

*Glazewski v. Allstate Ins. Co.*, 126 Ill.App.3d 401, 407–08, 81 Ill.Dec. 349, 354, 466 N.E.2d 1151, 1156 (1st Dist.1984), *aff'd in part, rev'd in part*, 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985). Since MIC sold the DeGrands precisely this combination of insurance—underinsured motorist coverage in an amount commensurate with the minimum uninsured motorist coverage required by law—the DeGrands claimed that the underinsurance coverage was virtually worthless. They therefore included within their complaint a cause of action under the Consumer Fraud and Deceptive Trade Practices Act, Ill. Ann.Stat. ch. 121½, §§ 261 *et seq.* (Smith–Hurd Supp.1989).

*Glazewski*, however, does not directly resolve our question. The language of the statute does not seem to require insurers to issue or offer *any* underinsurance to drivers who elect minimum uninsured motorist coverage. Such underinsurance would not be illusory to drivers who purchase underinsured motorist coverage in an amount greater than the minimum amount of uninsured motorist coverage required by law.

3. Of course, we do grant *some*, but not total, deference to the district court's interpretation of state law. *Instituto Nacional de Comercializacion Agricola (INDECA) v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1268 (7th Cir.1988); *Enis v. Continental Ill. Nat'l Bank & Trust Co.*, 795 F.2d 39, 40 (7th Cir.1986).

4. Of course, since the court in *Overbey* addressed an insurance policy predating the July 1, 1983 enactment date, its analysis of post–1983 policies is *dicta* and does not bind us. It does, however, provide some insight into the court's construction of the statute.

5. We do not believe, however, that *Krska* is so straightforward. The Illinois Appellate Court's opinion there does not clearly specify whether the motorist opted for the minimum amount of uninsured motorist coverage as required by law

On the other hand, the district court simply dismissed *Petersen* as incorrectly decided under the statute. The Illinois Appellate Court in *Petersen*, which seems to present facts nearly identical to those presented by the DeGrands, concluded that Allstate violated paragraph 755a–2 by not properly offering underinsured coverage to motorists possessing the statutory minimum amount of uninsured coverage. The *Petersen* court seems to have concluded that the "meaningful offer" requirements of *Cloninger* (a pre–1983 case) survived the amendments to the Illinois Insurance Code. 171 Ill.App.3d at 911–14, 121 Ill.Dec. at 789–90, 525 N.E.2d at 1096–97. Consequently, under *Petersen*, motorists who purchase only the minimum amount of uninsured coverage are still entitled to an *offer* of underinsured coverage.

Another panel of the Illinois Appellate Court reached the opposite conclusion in *Eipert*, a case decided after the district court considered the DeGrands' claim. There, the appellate court held that an insurer need not offer or provide any underinsured coverage to motorists who have only the minimum amount of uninsured coverage required by law. 189 Ill.App.3d at 635–37, 136 Ill.Dec. at 976–78, 545 N.E.2d at 500–02.

### IV.

We are left, then, with a number of plausible (yet, in many ways, contradictory) interpretations of the same statute from Illinois appellate courts without a controlling precedent from the state supreme court. Our lack of guidance is exacerbated by the fact that we can discern no policy reasons for the passage of a statute that, despite being enacted to increase motorist awareness of underinsurance,[6] may undermine that goal by arguably removing the meaningful offer requirement.

It is precisely this type of case that is appropriate for certification under Circuit Rule 52. *See, e.g., Shirkey v. Eli Lilly & Co.*, 852 F.2d 227, 235 (7th Cir.1988); *Kuba v. Ristow Trucking Co.*, 811 F.2d 1053 (7th Cir.1987). Certification to the Illinois Supreme Court is proper when "there are involved in any proceeding before [the Seventh Circuit] questions as to the law of this State, which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court...." Ill.Sup.Ct.R. 20. Those conditions are met here. We therefore certify the question raised by this appeal to the Illinois Supreme Court.

### V.

We respectfully request the Illinois Supreme Court to answer the following question of law:

Does Illinois law require insurers to offer underinsured motorist coverage (and, if so, in what amount) to automobile purchasers who opt for uninsured motorist coverage at the minimum statutory level?

QUESTION CERTIFIED.

---

*at the time of the original offer.* There is no question that he requested additional uninsured and underinsured coverage at a later time, but the court's discussion in *Krska* of the insurer's obligations under paragraph 755a–2 may be affected by the amount of the original policy. *See* Appellants' Reply Brief at 12 & n. 1.

Further, the appellate court reads "sections 143a–2(1) and 143a–2(5) together [to determine] that the defendant was required *to offer* underinsured motorist coverage in an amount equal to the plaintiff's bodily injury liability limit." 162 Ill.App.3d at 553, 114 Ill.Dec. at 35, 515 N.E.2d at 1306 (emphasis supplied). This conclusion seems unsupported by the revised version of the statute, which apparently requires insurers *to include, not to offer,* underinsured

coverage (in the same amount as uninsured coverage) to motorists possessing uninsured coverage in an amount exceeding the statutory minimum.

6. *See* Appellants' Reply Brief at 7 (quoting Illinois Senate Debate, June 22, 1982 ("Part of the problem is people are not aware that there is underinsurance ... and this obviously is going to make them aware of it because the law provides that they have to have uninsured motorists and included within that policy now if ... if this passes, will be this underinsurance motorist coverage as well. So everybody would be aware of it and the public will be better served and protected....") (Statement of Sen. D'Arco)).